Filed 10/7/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B256748 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA054709) |
| v. | |
| SILVESTRE CANO MARIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Murphy, Judge.  Reversed.

Law Offices of Russell S. Babcock and Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen, Alene M. Games and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Silvestre Cano Marin of felony driving under the influence, among other offenses. Following a prior appeal and remand, a different jury found that his prior conviction by of vehicular manslaughter qualifies as a strike under the Three Strikes law. The trial court enhanced defendant's sentence based on this finding. In his current appeal, defendant challenges the strike finding, contending that: (1) it must be vacated for insufficient evidence and instructional error, (2) the United States Supreme Court decision in *Descamps v. United States* (2013) 570 U.S. __ [133 S.Ct. 2276] (*Descamps*) entitles him to a jury trial on whether the prior conviction qualifies as a strike, and (3) because he is entitled to a jury trial, and because the strike finding must be reversed for insufficient evidence, double jeopardy bars such a retrial.

As we explain, the evidence was insufficient to prove that defendant's prior vehicular manslaughter conviction is a strike, because neither the elements of the crime nor the evidence presented showed that "defendant personally inflict[ed] great bodily injury on any person, other than an accomplice" (Pen. Code, §§ 1192.7, subd. (c)(8), 1192.8, subd. (a)). We also conclude that the case must be remanded for further proceedings to determine what evidence, if any, the prosecution will produce to prove that fact.

To resolve defendant's contentions that he is entitled to a jury trial, and that therefore double jeopardy bars any retrial, as well as to provide necessary guidance to the trial court, we consider the effect of *Descamps* on the California procedure for proof of prior convictions. We hold: (1) under *Descamps,* judicial factfinding authorized by *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*), going beyond the elements of the crime to "ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law" (*id.* at p. 706), violates the Sixth

Amendment right to a jury trial; (2) that right is not violated when, in determining whether a prior conviction qualifies to increase a defendant's punishment, the trial court considers "the documents . . . approved in [*Taylor v. United States* (1990) 495 U.S. 575 and *Shepard v. United States* (2005) 544 U.S. 13 (*Shepard*)]—i.e., indictment, jury instructions, plea colloquy, and plea agreement" (*Descamps, supra*, 133 S.Ct. at p. 2285, fn. 2) – to determine the statutory elements of the crime of which the defendant was convicted (*id.* at p. 2288); (3) under the reasoning of *Descamps,* the Sixth Amendment does not bar judicial factfinding beyond the statutory elements of the prior conviction, if in entering a guilty plea to the prior offense, the defendant waived his right to a jury trial as to such facts and either admitted them or they were found true by the court with defendant's assent; (4) in the instant case, because the elements of defendant's prior conviction by plea of vehicular manslaughter do not show that he personally inflicted great bodily injury on a person other than an accomplice, defendant is entitled to a jury trial on those facts, unless he waived his right to a jury trial as to such facts and admitted them or they were found true by the court with his assent; and (5) even if defendant is entitled to a jury trial on this issue, double jeopardy does not bar the retrial.

## BACKGROUND

This is the second time this case is before us. As we stated in our unpublished opinion in the first appeal (B242432), a jury convicted defendant of one count of driving under the influence of alcohol or drugs (Veh. Code, § 23152, subd. (a)) (count 1, a felony), two counts of hit and run driving (Veh. Code, § 20002, subd. (a)) (counts 2 & 3, misdemeanors), and one count of vandalism causing damage under $400 (Pen. Code, § 594, subd. (a)) (count 4, a misdemeanor). As to count 1, it was alleged that defendant previously had been

3

convicted of a violation of Penal Code section 192, subdivision (c)(1),[1] vehicular manslaughter, which is a sentencing enhancement pursuant to Vehicle Code sections 23550 and 23550.5 and the "Three Strikes" law (§§ 1170.12, subds. (a)-(d) & 667, subds. (b)-(i)). It was further alleged that defendant served a prior prison term pursuant to section 667.5, subdivision (b) for a conviction of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). Before trial, defendant admitted his prior convictions and prison term. After the jury rendered its verdict, he was sentenced to state prison for a term of seven years, consisting of the upper term of three years on count 1, doubled pursuant to the Three Strikes law; six months to run concurrently on count 2; six months to run concurrently on count 4; and a one-year consecutive term for the prior prison term. A six-month term on count 3 was stayed pursuant to section 654.

Defendant appealed, and in our unpublished opinion we affirmed the convictions, but reversed the true findings on the priors based due to the trial court's failure to advise defendant of his right of confrontation and privilege against self-incrimination before taking his admission. We remanded the case for new proceedings on the priors.

On remand, defendant represented himself. A jury trial was held on the prior convictions and prison term. The prosecution introduced documentary evidence to prove the allegations. As relevant to the vehicular manslaughter conviction, the prosecution introduced a certified copy of the abstract of judgment which showed that defendant was convicted by "plea" of violating "PC 192(C)(1) MANSLAUGHTER – VEHICULAR" on February 16, 2005, and was sentenced to two years in prison. The prosecution also introduced a certified copy of the minute

---

[1]     All unspecified section references are to the Penal Code.

4

order reflecting that defendant pled no contest to the charge. The prosecution introduced no evidence of the complaint or information, the circumstances underlying the charge, or the plea transcript. The jury found the alleged prior convictions, including the strike allegation, and prior prison term to be true, and, as before, the trial court sentenced defendant to seven years in state prison. Defendant appeals from the judgment.

## DISCUSSION

*Insufficiency of the Evidence*

Defendant contends (and respondent concedes) that the evidence was insufficient to prove that defendant's prior vehicular manslaughter conviction constituted a strike. We agree.

The only evidence the prosecution introduced was a certified copy of the abstract of judgment. It reflected a conviction by no contest plea of violating section 192, subdivision (c)(1), which defines vehicular manslaughter in relevant part as an unlawful killing without malice that occurs when "driving a vehicle in the commission of an unlawful act, not amounting to a felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."

Vehicular manslaughter under section 192, subdivision (c)(1) qualifies as a serious felony (§ 1192.7, subd. (c)), and therefore a strike offense (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1)), if in its commission "the defendant personally inflict[ed] great bodily injury on any person, other than an accomplice" (§§ 1192.7, subd. (c)(8), 1192.8, subd. (a)).[2] As respondent concedes, in the present case, the

---

[2] As here relevant, section 1192.7, subdivision (c) states in relevant part that the term "serious felony" includes "(8) any felony in which the defendant personally inflicts

5

prosecution introduced no evidence to prove this element. On a bare record showing only that defendant was convicted by plea of violating section 192, subdivision (c)(1), we can conclude at most that he admitted his grossly negligent conduct proximately caused a death, not that he personally inflicted great bodily injury. "'Proximately causing an injury is clearly different from personally inflicting an injury.' [Citation.] 'To "personally inflict" an injury is to directly cause an injury, not just to proximately cause it. . . .' [Citation.]" (*People v. Bland* (2002) 28 Cal.4th 313, 337.) "'We think it obvious that an individual can and often does proximately cause injury without personally inflicting that injury. . . .' [Citation.]" (*Ibid.*)

Thus, absent proof that defendant personally inflicted the injuries that killed the vehicular manslaughter victim and that the victim was someone other than an accomplice in the crime, the prosecution failed to prove that defendant's prior vehicular manslaughter conviction was a strike. We therefore reverse the strike finding. This conclusion renders moot defendant's contention that the trial court erred in not instructing the jury on the requirement of finding of personal infliction of bodily injury.

---

great bodily injury on any person, other than an accomplice." Effective 2008, the Legislature amended section 1192.8, which, in response to the decisions in *People v. Gonzales* (1994) 29 Cal.App.4th 1684 and *People v. Bow* (1993) 13 Cal.App.4th 1551, clarified in relevant part that "For purposes of subdivision (c) of Section 1192.7, 'serious felony' also means any violation . . . of Section 192, subdivision . . . (c) . . . of this code . . . when [it] involve[s] the personal infliction of great bodily injury on any person other than an accomplice . . . within the meaning of paragraph 8 . . . of subdivision (c) of Section 1192.7."

Section 1192.8 also provides that vehicular manslaughter constitutes a serious felony if it involves "the personal use of a dangerous or deadly weapon, within the meaning of paragraph . . . (23) of subdivision (c) of Section 1192.7." In their briefing, the parties do not suggest this provision applies here, and we do not further discuss it.

*Remand is Required*

From the evidence presented, we cannot know what the record of conviction (other than the abstract of judgment and plea minute order) reveals about the defendant's prior manslaughter conviction and whether it might qualify as a strike. Therefore, the matter must be remanded for further proceedings to determine what the nature of that evidence, if any, is.

Defendant contends that on remand, he is entitled to a jury trial under *Descamps, supra,* 570 U.S. __ [133 S.Ct. 2276] on whether he personally inflicted bodily injury on a non-accomplice in the commission of his vehicular manslaughter, and that, therefore, double jeopardy bars such a retrial. Respondent contends that on remand, defendant is entitled to a jury trial only if the record of conviction shows that "the conviction realistically may have been based on conduct" that did not involve defendant's personal infliction of great bodily injury on a non-accomplice. (*People v. McGee, supra,* 38 Cal.4th 682 at p. 706.)

In order to resolve these contentions and provide necessary guidance to the trial court for the proceedings on remand, we must decide whether judicial factfinding beyond the elements of the prior conviction permitted by *McGee, supra,* survives the United States Supreme Court's interpretation of the Sixth Amendment jury trial right in *Descamps, supra.* To the extent the defendant is entitled to a jury trial on whether his prior conviction constitutes a strike, we must also consider whether double jeopardy bars a retrial. We discuss each of these issues in turn.

7

*Right to a Jury Trial*

 *California Procedure*

 In *McGee,* the California Supreme Court framed its view of permissible judicial factfinding around the decisions of the United States Supreme Court in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*) and *Shepard v. United States* (2005) 544 U.S. 13 (*Shepard*). Thus, we start with those decisions.

 In *Apprendi*, the high court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra*, 530 U.S. at p. 490.) It exempted "the fact of a prior conviction" from the right to a jury trial based on its previous decision in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 (*Almendarez-Torres*). In *Almendarez-Torres*, the court upheld the enhancement of the defendant's sentence based on prior convictions not alleged in his indictment. As construed in *Apprendi*, the basis of the decision in *Almendarez-Torres* was as follows: "Because Almendarez-Torres had admitted the three earlier convictions for aggravated felonies — all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own — no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court. . . . Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." (*Apprendi, supra*, 530 U.S. at p. 488.) The *Apprendi* court acknowledged "it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical

8

application of our reasoning today should apply if the recidivist issue were contested." (*Id.* at pp. 489, fn. omitted.) But because the validity of *Almendarez-Torres* was not challenged, the court declined to "revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset." (*Ibid*.)

*Shepard, supra,* 544 U.S. 13 arose under the Armed Career Criminal Act (ACCA), which imposes a minimum 15-year prison sentence for certain offenses based on three prior convictions qualifying under the ACCA as serious or violent felonies, including so-called "generic burglary." The Government contended that in determining whether the defendant's prior Massachusetts burglary convictions by guilty plea constituted "generic burglary" – that is, whether defendant broke into buildings — the district court could look beyond the elements of the offenses to which the defendant had pleaded guilty, and consider police reports submitted with the applications for the complaints in the prior cases. (*Id.* at pp. 17-19, 20-21.)

The issue in *Shepard*, as stated in the lead opinion, was as follows: "In *Taylor v. United States* [1990] 495 U.S. 575, we held that a court sentencing under the ACCA could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was for generic burglary. The question here is whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary. We hold that it may not, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." (*Shepard,*

9

*supra*, 544 U.S. at p. 16; see *id.* at p. 26 "[w]e hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.")

The holding was based on statutory interpretation, but for a four-justice plurality concluded that interpretation rested in part on avoiding Sixth Amendment concerns under *Apprendi*: "[T]he sentencing judge considering the ACCA enhancement would (on the Government's view) make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea, and the dispute raises the concern underlying *Jones* [*v. United States* (1999) 526 U.S. 227] and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality [citation], therefore counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as *Taylor* constrained judicial findings about the generic implication of a jury's verdict." (*Shepard, supra*, 544 U.S. at pp. 25-26.)

The fifth vote for the holding was by Justice Thomas who did not join in the plurality's Sixth Amendment discussion. Rather, in a separate opinion, he

10

expressed the view that all judicial factfinding under the ACCA violates the right to a jury trial under *Apprendi* (*Shepard, supra*, 544 U.S. at p. 26), and that "broadening the evidence judges may consider when finding facts under *Taylor*–by permitting sentencing courts to look beyond charging papers, jury instructions, and plea agreements to an assortment of other documents such as complaint applications and police reports–. . . would give rise to constitutional error, no less than does the limited factfinding that *Taylor's* rule permits." (*Id.* at p. 28.)

With *Apprendi* and *Shepard* as a backdrop, the California Supreme Court in *McGee* considered the constitutional viability of judicial factfinding beyond the elements of a prior conviction permitted by California law. In *McGee*, it was alleged that the defendant's two prior Nevada convictions for robbery constituted serious felonies and, therefore, strikes under California law. However, the elements of robbery under Nevada law differ from California law: Nevada requires general intent, whereas California requires specific intent to steal, and Nevada robbery includes a taking through fear of future injury to the person or property of anyone in the victim's company, whereas California does not. (*McGee, supra*, 38 Cal.4th at p. 688.) Relying on the record of defendant's prior Nevada convictions, including the preliminary hearing transcripts of the charges, the trial court found that the convictions qualified as robberies under California law and thus were strikes. (*Id.* at pp. 689-690.)

The court of appeal in *McGee* held that under *Apprendi,* the defendant was entitled to a jury trial to determine whether the prior convictions constituted strikes. (*McGee, supra*, 38 Cal.4th at p. 690.) On review, our Supreme Court in *McGee* concluded otherwise, reasoning that *Apprendi* and its discussion of *Almendarez-Torres* recognized a narrow exception to the jury trial right for judicial fact finding on issues related to recidivism. (*Id*. at pp. 698-699.)

11

Explaining the California procedure for proving prior convictions, the court stated: "[T]he nature of the inquiry required (and permitted) in this context under California law . . . is not . . . a determination or finding 'about the [defendant's earlier] conduct itself, such as the intent with which a defendant acted.' Instead, it is a determination regarding the nature or basis of the defendant's *prior conviction* —specifically, whether *that conviction* qualified as a conviction of a serious felony. California law specifies that in making this determination, the inquiry is a limited one and must be based upon the record of the prior criminal proceeding, with a focus on the elements of the offense of which the defendant was convicted. If the enumeration of the elements of the offense does not resolve the issue, an examination of the record of the earlier criminal proceeding is required in order to ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law. [Citation.] The need for such an inquiry does not contemplate that the court will make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct [citation], but instead that the court simply will examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that *the conviction* is of the type that subjects the defendant to increased punishment under California law. This is an inquiry that is quite different from the resolution of the issues submitted to a jury, and is one more typically and appropriately undertaken by a court." (*McGee, supra*, 38 Cal.4th at p. 706.)

The court also rejected the contention that the then-recent decision in *Shepard* changed the analysis. The court reasoned that "[a]lthough the *Shepard* decision may suggest that a majority of the high court would view the legal issue presented in the case before us as presenting a serious constitutional issue, the high

12

court's decision did not purport to resolve that issue" and instead rested its decision on statutory interpretation. Thus, "*Shepard* fails to establish the validity of the Court of Appeal's application of *Apprendi*." (*McGee, supra*, 38 Cal.4th at p. 708.)

The Supreme Court added, however: "We recognize the possibility that the United States Supreme Court, in future decisions, may extend the *Apprendi* rule in the manner suggested by the Court of Appeal below. But because in our view there is a significant difference between the nature of the inquiry and the factfinding involved in the type of sentence enhancements at issue in *Apprendi* and its progeny as compared to the nature of the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute, we are reluctant to assume, in advance of such a decision by the high court, that the federal constitutional right to a jury trial will be interpreted to apply in the latter context." (*McGee, supra*, 38 Cal.4th at p. 709.)

*The Decision in Descamps*

In 2013, the United States Supreme Court decided *Descamps, supra,* 570 U.S. __ [133 S.Ct. 2276].[3] As we explain, that decision constitutes the extension of *Apprendi* that *McGee* envisioned might occur.

Like *Shepard, Descamps* involved proof of a qualifying prior conviction under the ACCA. As we have noted, the ACCA increases sentences for defendants

---

[3] Justice Kagan authored the opinion, in which Chief Justice Roberts and Justices Scalia, Kennedy, Ginsburg, Breyer, and Sotomayor concurred. Justice Kennedy filed a separate concurring opinion. Justice Thomas concurred in the judgment, reiterating his position that the ACCA violates *Apprendi* because it permits trial judges to find facts that increase a defendant's sentence. (*Descamps, supra*, 133 S.Ct. at pp. 2294-2295.) Justice Alito dissented.

13

who have three prior convictions of a violent felony, including (among other listed offenses) "burglary." It is the court's Sixth Amendment discussion in *Descamps* that is directly relevant to the continuing viability of *McGee*, but to understand the full import of that discussion it is necessary to consider the high court's analysis of how priors may be proved under the ACCA.

The high court explained that its past decisions established two methods a district court may use to determine if a prior convictions qualifies under the ACCA. The first is the "'categorical approach,'" under which the court "compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." (*Descamps, supra*, 133 S.Ct. at p. 2281.)

The second method is the "'modified categorical approach,'" which applies "when a prior conviction is for violating a so-called 'divisible statute.'" (*Descamps, supra*, 133 S.Ct. at p. 2281.) As the court explained, "[t]hat kind of statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." (*Id.* at p. 2281.) Conceptually, according to the court, a divisible statute "effectively

14

creates 'several different . . . crimes'" (*id.* at p. 2285) rather than "several different methods of committing one offense" (*id.* at p. 2285, fn. 2), and the modified categorical approach merely allows the court to determine which crime was the crime of conviction (*id.* at pp. 2284-2285).

In *Descamps,* the prior conviction at issue was the defendant's California burglary conviction (by guilty plea) under section 459, which (because it does not necessarily require breaking and entering) defines burglary more broadly than the generic crime of "burglary." (*Id.* at p. 2282.) However, section 459 is not a "divisible" statute – it defines a single crime and does not list its elements in the alternative. Nonetheless, in deciding that the defendant's burglary conviction qualified under the ACCA, the district court applied the "'modified categorical approach,'" and considered the guilty plea transcript. The transcript reflected that the prosecutor had stated the crime ""'involve[d] the breaking and entering of a grocery store."''' (*Id.* at p. 2282.) Because the defendant had not objected to that statement, the district court concluded that the prior conviction was for a generic burglary and qualified as a violent felony under the ACCA. (*Id.* at p. 2282.)

The Ninth Circuit affirmed. As described by the high court, the Ninth Circuit's application of the modified categorical approach to indivisible statutes permitted the sentencing court to "'conside[r] to some degree the factual basis for the defendant's conviction' or, otherwise stated, 'the particular acts the defendant committed.' [Citation.] More specifically, the court could look to reliable materials (the charging document, jury instructions, plea colloquy, and so forth) to determine 'what facts' can 'confident[ly]' be thought to underlie the defendant's conviction in light of the 'prosecutorial theory of the case' and the 'facts put forward by the government.' [Citation.] It makes no difference, in the Ninth Circuit's view, whether 'specific words in the statute' of conviction "'actually

15

required"' the jury (or judge accepting a plea) 'to find a particular generic element.' [Citation.]" (*Descamps, supra*, 133 S.Ct. at p. 2286.)

The high court "granted certiorari . . . to resolve a Circuit split on whether the modified categorical approach applies to statutes like § 459 that contain a single, 'indivisible' set of elements sweeping more broadly than the corresponding generic offense." (*Descamps, supra*, 133 S.Ct. at p. 2283.) Based its review of its prior case law, including *Shepard* and *Taylor,* and the rationale of those decisions (including Sixth Amendment concerns), the court held that the modified categorical approach did not apply to an indivisible statute.

As the court observed: "the modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction. So understood, the modified approach cannot convert Descamps' conviction under § 459 into an ACCA predicate, because that state law defines burglary not alternatively, but only more broadly than the generic offense." (*Descamps, supra*, 133 S.Ct. at p. 2283.) The court characterized the modified categorical approach as "merely help[ing] implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.' [Citation.] If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of. That is the

job, as we have always understood it, of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." (*Id.* at p. 2285.)

In practical use, as described by the court (in response to the dissent), "if the dissent's real point is that distinguishing between 'alternative elements' and 'alternative means' is difficult, we can see no real-world reason to worry. Whatever a statute lists (whether elements or means), the documents we approved in *Taylor* and *Shepard*—i.e., indictment, jury instructions, plea colloquy, and plea agreement—would reflect the crime's elements. So a court need not parse state law . . . : When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense." (*Descamps, supra*, 133 S.Ct. at p. 2285, fn. 2.)

The high court's limits on proving prior convictions under the ACCA had three underpinnings. Two of the underpinnings – the "ACCA's text and history," and "'the practical difficulties and potential unfairness of a factual approach'" (*Descamps, supra*, 133 S.Ct. at p. 2287) — are not relevant here. But the third — "the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries" (*ibid.*) — is critical.

Regarding its Sixth Amendment concerns, the court reiterated the holding of *Apprendi*: "We have held that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (*Descamps, supra*, 133 S.Ct. at p. 2288.) The court continued: "Under ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. Those concerns,

17

we recognized in *Shepard,* counsel against allowing a sentencing court to 'make a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea,' or what the jury in a prior trial must have accepted as the theory of the crime. [Citation.] Hence our insistence on the categorical approach. [¶] . . . the Ninth Circuit's ruling flouts our reasoning . . . by extending judicial factfinding beyond the recognition of a prior conviction. Our modified categorical approach merely assists the sentencing court in identifying the defendant's crime of conviction, as we have held the Sixth Amendment permits. But the Ninth Circuit's reworking authorizes the court to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct. [Citation.] And there's the constitutional rub. The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances. [Citation.] Similarly, as *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment. [Citation.] So when the District Court here enhanced Descamps' sentence, based on his supposed acquiescence to a prosecutorial statement (that he 'broke and entered') irrelevant to the crime charged, the court did just what we have said it cannot: rely on its own finding about a non-elemental fact to increase a defendant's maximum sentence." (*Id.* at pp. 2288-2289.)

*California Court of Appeal Decisions Interpreting Descamps*

Two decisions by the Court of Appeal, *People v. Wilson* (2013) 219 Cal.App.4th 500 (*Wilson*) and *People v. Saez* (2015) 237 Cal.App.4th 1177 (*Saez*), have considered the impact of *Descamps, supra,* 570 U.S. __ [133 S.Ct. 2276] on the California procedure for proof of prior convictions under *McGee.*

In *Wilson,* the prior conviction was for gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), to which the defendant had pled no contest. (*Wilson, supra*, 219 Cal.App.4th at pp. 503-504.)  Examining the record of the conviction, the trial court concluded that the conviction constituted a strike because the defendant (as the driver of the vehicle when the fatal accident occurred) had personally inflicted great bodily injury on the victim, the backseat passenger in the defendant's car.  However, at the preliminary hearing, the defendant had disputed whether he was in control of the vehicle when the fatal accident occurred. According to statements he made at the accident scene, his front seat passenger (who was also injured) had grabbed the steering wheel, causing the accident. Thus, in order to find that the defendant personally inflicted great bodily injury, the trial court necessarily had resolved a disputed factual issue related to the circumstances of the underlying offense.

The court in *Wilson* concluded that the trial court's finding violated both the California procedure under *McGee* and the Sixth Amendment right to a jury trial under *Apprendi* as construed in *Descamps.*  As for *McGee,* the court relied on *McGee's* language that permissible factfinding "'does not contemplate that the court will make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct.'"  (*Wilson, supra*, 219 Cal.App.4th at p. 510, quoting *McGee*, *supra,* 38 Cal.4th at p. 706.)  As for *Apprendi,* the court reasoned that *Descamps* "held that a sentencing court's finding of priors based on

19

the record of conviction implicates the Sixth Amendment under *Apprendi*" (*Wilson, supra*, 219 Cal.App.4th at p. 515), and that the trial court had necessarily made ""'"a disputed" determination' of fact" related to the defendant's underlying conduct – "a task [*Descamps*] specifically counseled against." (*Wilson, supra*, 219 Cal.App.4th at p. 516, quoting *Descamps, supra*, 133 S.Ct. at p. 2288.)

The court did "not consider . . . whether the broader application of *Apprendi* and *Descamps* to California's sentence enhancement scheme would leave intact the kinds of findings—e.g., those not concerning the facts of a defendant's prior conduct—heretofore endorsed under California law. We hold only that federal law prohibits what *McGee* already proscribed: A court may not impose a sentence above the statutory maximum based on disputed facts about prior conduct not admitted by the defendant or implied by the elements of the offense." (*Wilson, supra*, 219 Cal.App.4th at p. 516.)

In *Saez,* the court confronted the issue left open by *Wilson.* The prior conviction at issue was a Wisconsin conviction by guilty plea for false imprisonment while in possession of a weapon. (*Saez, supra,* 237 Cal.App.4th at p. 1192.) The elements of that crime do not themselves establish facts necessary to qualify the conviction as a strike under California law. (*Id*. at pp. 1194-1195.) Whether the conviction constituted a strike turned on whether it involved personal use of a firearm (§ 1192.7, subd. (c)(8)). That determination turned on consideration of a police officer's affidavit of probable cause, attached to the complaint, in which the officer stated, in substance, that he saw the defendant point a handgun at the victim while restraining him. (*Id*. at pp. 1193, 1196.) A transcript of the guilty plea was not produced, but the judgment roll contained an entry for the sentencing hearing stating that all parties had stipulated to the complaint as the basis of the plea. (*Id.* at p. 1192.) The trial court concluded that the conviction

constituted a strike, but did not specifically discuss the basis of its determination. (*Id.* at p. 1193.)

The court of appeal in *Saez* held that "nothing in *McGee . . .* or other state cases addressing reliance on prior-conviction records prevented the trial court from relying on the affidavit statements to conclude that Saez's Wisconsin conviction for false imprisonment while armed involved his personal use of a firearm and was therefore a strike under California law." (*Saez, supra*, 237 Cal.App.4th at p. 1198.) But the court concluded that such reliance did violate the Sixth Amendment, because "*Descamps* declared that the Sixth Amendment prohibits 'a sentencing court [from] "mak[ing] a disputed" determination "about what the defendant and state judge must have understood as the factual basis of the prior plea."' [Citation.]" (*Id.* at p. 1206.) In his guilty plea, the defendant admitted the elements of the Wisconsin crime, "[b]ut he did not admit, or waive his Sixth Amendment rights regarding," the fact that he personally used a firearm, and "his stipulation to the complaint as the factual basis of his plea [did not] constitute a waiver of Sixth Amendment rights or an admission as to those additional facts." (*Id.* at p. 1206.)

Recognizing that the California Supreme Court had not yet spoken on whether the California procedure described in *McGee* survives *Descamps,* the court in *Saez* nonetheless concluded that "*Descamps's* discussion of the Sixth Amendment principles applicable when prior convictions are used to increase criminal sentences is clear and unavoidable and was adopted by eight of the nine justices on the high court. Under these unusual circumstances, we are compelled to apply those constitutional principles here. [¶] . . . . [T]his much is clear [from *Descamps*]: when the elements of a prior conviction do not necessarily establish that it is a serious or violent felony under California law (and, thus, a strike), the

21

court may not under the Sixth Amendment '"make a disputed" determination "about what the defendant and state judge must have understood as the factual basis of the prior plea," or what the jury in a prior trial must have accepted as the theory of the crime.' [Citation.] Thus, we conclude that the trial court acted in contravention of the Sixth Amendment by necessarily relying on the police officer's statements in the Wisconsin record of conviction to increase Saez's sentence." (*Saez, supra*, 237 Cal.App.4th at p. 1207-1208.)

*Unconstitutionality of Judicial Factfinding Permitted by McGee*

We have discussed the foregoing decisions in some detail to make clear why we conclude, as did the court in *Saez,* that it is no longer tenable to draw a distinction, in the words of *McGee*, "between the nature of the inquiry and the factfinding involved in the type of sentence enhancements at issue in *Apprendi* and its progeny as compared to the nature of the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute." (*McGee, supra,* 38 Cal.4th at p. 709.) The type of factfinding permitted by *McGee* is virtually indistinguishable from the Ninth Circuit approach that the high court disapproved in *Descamps*. The Ninth Circuit approach permitted an examination of "reliable materials" to determine "'what facts' can '*confident[ly]' be thought to underlie the defendant's conviction* in light of the 'prosecutorial theory of the case' and the 'facts put forward by the government.' [Citation.]" (*Descamps, supra*, 133 S.Ct. at p. 2286, italics added.) Similarly, *McGee* permits an examination of the record of conviction to determine "whether that record reveals whether the conviction *realistically may have been based on conduct* that would not constitute a serious felony under California law." (*McGee, supra*, 38 Cal.4th at p. 706, italics

22

added.)  The two approaches – one based on facts "confidently" believed to underlie the conviction, the other on facts that "realistically" underlie the conviction – are in all relevant respects indistinguishable.

*Descamps* leaves no true room for debate that this type of factfinding violates the Sixth Amendment.  Though not a holding, the court's language is particularly pointed:  a court's factfinding beyond identifying the elements of the crime "would (*at the least*) raise serious Sixth Amendment concerns"; "the Ninth Circuit's ruling *flouts our reasoning*" by "extending judicial factfinding beyond the recognition of a prior conviction" (*Descamps, supra*, 133 S.Ct at p. 2288, italics added); *"*[t]he Sixth Amendment *contemplates that a jury—not a sentencing court*—will find such facts"; "when the District Court here enhanced Descamps' sentence, based on [judicial factfinding], the court *did just what we have said it cannot* [referring to the Sixth Amendment discussion in *Shepard*]:  rely on its own finding about a non-elemental fact to increase a defendant's maximum sentence" (*id.* at pp. 2288-2289, italics added).  Such language conveys the unmistakable message that eight members of the high court believe (though they did not expressly hold in *Descamps*) that the Sixth Amendment precludes the kind of factfinding permitted by the Ninth Circuit approach, and hence, by *McGee*.

For these reasons, we conclude that *Descamps* is the extension of *Apprendi* that the California Supreme Court contemplated in *McGee*.  The California procedure for determining whether prior convictions qualify as strikes, insofar as it is based on judicial factfinding beyond the elements of the offense, is incompatible with the United States Supreme Court's view of the Sixth Amendment right to a jury trial as articulated in *Descamps.*  In short, such judicial factfinding, which looks beyond the elements of the crime to the record of conviction to determine

23

what conduct "realistically" underlay the conviction, violates the Sixth Amendment right to a jury trial.

*Defendant's Right to a Jury Trial on Remand in This Case*

Within the concept of determining the "fact of a prior conviction" (*Apprendi, supra,* 530 U.S. at p. 490), *Descamps* is clear that a certain type of judicial factfinding is constitutionally permissible.  In determining whether a prior conviction qualifies to be used to increase a defendant's punishment under a recidivist sentencing statute, the trial court may, without violating the Sixth Amendment right to a jury trial, use "the documents . . . approved in *Taylor* and *Shepard*—i.e., indictment, jury instructions, plea colloquy, and plea agreement" (*Descamps, supra*, 133 S.Ct. at p. 2285, fn. 2) – to the extent they show the *statutory elements* of the crime of which the defendant was convicted (*id.* at p. 2288).  This kind of factfinding is permissible because it simply reflects the crime (and more particularly the elements of the crime) which the defendant admitted in his guilty plea following a waiver of his right to a jury trial, or the crime (and its elements) a jury determined beyond a reasonable doubt that he committed.

Beyond the elements of the crime, the scope of judicial factfinding that is incompatible with the right to a jury trial is variously described in *Descamps* as the following:  (1) "'a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea,' or what the jury in a prior trial  must have accepted as the theory of the crime" (citing the plurality opinion in *Shepard, supra,* 544 U. S. at p. 25, and Justice Thomas' concurrence that such a finding would be "'constitutional error, no doubt,'" *id.* at p. 28); (2) a finding concerning "what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct"; (3)  a finding about "amplifying but legally

24

extraneous circumstances"; (4) inferences from a plea transcript based on "whatever [a defendant] says, or fails to say, about superfluous facts" (citing the *Shepard* plurality*, supra,* 544 U.S. at pp. 24-26*)*; and (5) the trial court's "own finding about a non-elemental fact." (*Descamps, supra*, 133 S.Ct. at pp. 2288-2289.) In its various wordings, the court's language conveys that judicial factfinding beyond the elements of the defendant's prior conviction – so called "superfluous facts" or "non-elemental facts" – is generally constitutionally impermissible. However, despite such language, the reasoning of *Descamps,* supplemented by its favorable treatment of *Shepard,* would permit judicial factfinding beyond the elements of the prior conviction if, in entering a guilty plea, the defendant waived his right to a jury trial as to such facts and either admitted them or they were found true by the court with defendant's assent. (See *Shepard, supra,* 544 U.S. at p. 16 ["a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, *and any explicit factual finding by the trial judge to which the defendant assented*" (italics added)]; *id.* at p. 26 ["[w]e hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant *in which the factual basis for the plea was confirmed by the defendant*, or to some comparable judicial record of this information" (italics added)].)[4]

---

[4] In *Saez,* the court expressly did not "decide whether a trial court could violate the Sixth Amendment by relying on a defendant's prior admission of a non-elemental fact in making a strike determination." (237 Cal.App.4th at p. 1207, fn. 21.) We consider the issue, because it is necessary to give guidance on the nature of the proceedings on remand.

As relevant to the proceedings on remand here, we already have determined that the elements of defendant's prior vehicular manslaughter conviction do not show that he personally inflicted great bodily injury on a person other than an accomplice. Therefore, on remand, under our understanding of *Descamps*, if the prosecution seeks to prove that fact by resort to documents in the record of conviction, the defendant is entitled to a jury trial on the issue whether he personally inflicted great bodily injury on a person other than an accomplice, unless the defendant waived his right to a jury trial as to such facts and either admitted them or they were found true by the court with defendant's assent.

*Double Jeopardy*

The courts in *Wilson* and *Saez* did not discuss the double jeopardy implications, if any, of their decisions. Both decisions reversed the trial court's strike finding, and remanded for resentencing, without discussing the issue raised by defendant here: that to the extent he is entitled to a jury trial, double jeopardy bars such a retrial, because the strike finding is being reversed for insufficient evidence. (*Saez, supra,* 237 Cal.App.4th at p. 1209; *Wilson, supra,* 219 Cal.App.4th at pp. 519-520.) We conclude that double jeopardy does not bar a retrial.

In *People v. Monge* (1997) 16 Cal.4th 826 (*Monge I*), the California Supreme Court held that retrial of a prior conviction violates neither the state nor federal constitutional Double Jeopardy Clause. As to the federal constitutional holding, the United State Supreme Court affirmed that decision in *Monge v. California* (1998) 524 U.S. 721 (*Monge II*), a pre-*Apprendi* decision. The *Monge II* court held that "the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context." (*Id.* at p. 734.) As the

26

court explained, double jeopardy "protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense," but not against repeated "sentencing proceedings [citation] because the determinations at issue do not place a defendant in jeopardy for an 'offense,'" and "[a]n enhanced sentence imposed on a persistent offender thus 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' [Citations.]" (*Id.* at pp. 727-728.) Moreover, when the result of a sentencing proceeding is overturned for insufficient evidence, that finding is not the equivalent of an acquittal of an offense, because "pronouncement of sentence simply does not 'have the qualities of constitutional finality that attend an acquittal,' [citations]," and "[t]he Double Jeopardy Clause 'does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be.' [Citation.] Consequently, it is a 'well-established part of our constitutional jurisprudence' that the guarantee against double jeopardy neither prevents the prosecution from seeking review of a sentence nor restricts the length of a sentence imposed upon retrial after a defendant's successful appeal. [Citations.]" (*Id.* at pp. 729-730.)

The court in *Monge II* distinguished its decision in *Bullington v. Missouri* (1981) 451 U.S. 430, which applied double jeopardy to capital sentencing proceedings, as being based on "both the trial-like proceedings at issue and the severity of the penalty at stake." (*Monge II, supra*, 524 U.S. at p. 722.) "Where noncapital sentencing proceedings contain trial-like protections, that is a matter of legislative grace, not constitutional command. Many States have chosen to implement procedural safeguards to protect defendants who may face dramatic

increases in their sentences as a result of recidivism enhancements. We do not believe that because the States have done so, we are compelled to extend the double jeopardy bar. Indeed, were we to apply double jeopardy here, we might create disincentives that would diminish these important procedural protections. [¶] We conclude that *Bullington*'s rationale is confined to the unique circumstances of capital sentencing and that the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context." (*Id.* at p. 734.)

We recognize that to the extent Sixth Amendment right to a jury trial applies to proof of a prior conviction based on the post-*Monge II* decision in *Descamps* (as well as *Apprendi* and *Shepard*), part of the rationale for the decision in *Monge II* is undercut. (See *United States v. Blanton* (2007) 476 F.3d 767, 772 [Government's appeal from district court decision denying ACCA sentencing enhancement based on insufficient evidence violated double jeopardy; "without assuming that *Monge* is no longer good law, but following the more recent dictate of *Apprendi*, we find that the general inapplicability of the Double Jeopardy Clause to sentencing proceedings is not sufficient to answer the question presented in this case."].) However, the United States Supreme Court has not overruled *Monge II*. Moreover, in *People v. Barragan* (2004) 32 Cal.4th 236, 239, 241-242, our Supreme Court, relying in part on *Monge I* and *Monge II*, held that retrial of strike allegation after reversal for insufficient evidence is permissible. (Cf. *People v. Seel* (2004) 34 Cal.4th 535, 542-543, 548-550 [discussing *Monge I* and *Monge II*, but holding that under *Apprendi* double jeopardy prohibited retrial of allegation of premeditation under section 664].)

Under these circumstances, we are bound by *Monge I, Monge II,* and *Barragan.* In short, depending on what evidence the prosecution presents on

28

remand, defendant may be entitled to a jury trial, but under the current state of the law that proceeding remains a noncapital sentencing proceeding to which double jeopardy does not apply.

## DISPOSITION

The judgment is reversed as to the true finding on the strike allegation. The case is remanded to the trial court for further proceedings. On remand, if the prosecution elects to retry the strike allegation, defendant is entitled to a jury trial as to whether in his prior vehicular manslaughter conviction he personally inflicted great bodily injury on a person other than an accomplice, unless in the plea proceeding that resulted in the conviction the defendant waived his right to a jury trial as to such facts and either admitted them or they were found true by the court with defendant's assent.

**CERTIFIED FOR PUBLICATION**


WILLHITE, J.


We concur:




EPSTEIN, P. J.          MANELLA, J.


29