Filed 11/5/15  P. v. Nieves CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE NIEVES,<br><br>    Defendant and Appellant. | B249986<br><br>(Los Angeles County<br>Super. Ct. No. BA397107) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jose I. Sandoval, Judge.  Reversed and remanded.

Carey D. Gorden, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Paul M. Roadarmel, Jr. and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Jose Nieves, raises a sentencing issue after his conviction of criminal threats, possession of a firearm by a felon, and assault with a semiautomatic firearm, with prior serious felony conviction, prior prison term and firearm use enhancements (Pen. Code §§ 422, 29800, 245, 667, subds. (a)-(i), 667.5, 12022.5).[1] The trial court sentenced Nieves to a 19-year prison term.

The judgment is reversed and remanded for further proceedings.

### BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

Defendant Nieves lived in a converted garage in the back yard of Diana Cabrera's house. Around midnight on April 29, 2012, Cabrera heard gunshots coming from the direction of the converted garage. She looked outside and saw Nieves in the backyard. About 30 minutes later, Nieves walked into the house with a gun and put it on the kitchen counter. Cabrera yelled, " 'He has a gun.' "

Jason Griffin, a friend of Cabrera's son, was sleeping on the living room couch and he awoke when Cabrera screamed. Because he was terrified that Nieves was moving around the house with a gun, Griffin "started praying pretty loud." Nieves got irate, threw Griffin's Bible on the floor, pointed the gun at Griffin, and threatened to kill him.

Griffin left the house, went to a nearby pay phone and called the police. The responding officer went back to Cabrera's house with Griffin. One of Cabrera's sons told the officer where to find Nieves's gun.

### CONTENTION

Nieves contends there was insufficient evidence that his Florida arson conviction constituted a prior serious felony conviction under section 667, subdivision (a).

---

[1] All further references are to the Penal Code unless otherwise specified.

## DISCUSSION

1. *Background.*

Section 667, subdivision (a)(1), provides that "any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

As part of Nieves's sentence, the trial court imposed two five-year section 667, subdivision (a), enhancement terms: one for a 2002 Florida arson conviction, and one for a 2003 California conviction for shooting at an occupied residence. Nieves contends there was insufficient evidence to prove that his Florida arson conviction constituted a serious felony for sentencing purposes because that crime was not the equivalent of a California arson conviction.

Section 667, subdivision (a)(4), provides: "As used in this subdivision, 'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7." Section 1192.7, subdivision (c)(14), lists "arson." California arson is defined by section 451 as follows: "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." In pertinent part, the Florida arson statute provides that arson is committed by "[a]ny person who willfully

3

and unlawfully, or while in the commission of any felony, by fire or explosion, damages or causes to be damaged" any of a list of specified structures.[2]

One of the methods for determining if Nieves's Florida arson conviction constituted a violation of California's arson statute is by strict application of the "least adjudicated elements test," which involves a comparison of the statutory elements of the two crimes. "Under our sentencing laws, foreign convictions may qualify as serious felonies, with all the attendant consequences for sentencing, if they satisfy certain conditions. For a prior felony conviction from another jurisdiction to support a serious-felony sentence enhancement, the out-of-state crime must 'include[ ] all of the elements of any serious felony' in California. (§ 667, subd. (a)(1).)" (*People v. Warner* (2006) 39 Cal.4th 548, 552.) The first step is to "determine what elements are required" under the foreign state's law, and the second step is to determine "whether that crime contains all of the elements of a qualifying serious felony in California." (*Id.*, at pp. 553, 556.)

If this facial comparison of statutory elements does not resolve the issue, however, then resort may be had to the defendant's underlying record of conviction. "Just as it may do when the prior conviction was suffered in California (*People v. Guerrero* (1988) 44 Cal.3d 343 . . .), the trier of fact may consider the entire record of

---

[2]     Section 806.01, Florida Statutes, provides:
       "(1) Any person who willfully and unlawfully, or while in the commission of any felony, by fire or explosion, damages or causes to be damaged: [¶] (a) Any dwelling, whether occupied or not, or its contents; [¶] (b) Any structure, or contents thereof, where persons are normally present, such as: jails, prisons, or detention centers; hospitals, nursing homes, or other health care facilities; department stores, office buildings, business establishments, churches, or educational institutions during normal hours of occupancy; or other similar structures; or [¶] (c) Any other structure that he or she knew or had reasonable grounds to believe was occupied by a human being, [¶] is guilty of arson in the first degree . . . .
       "(2) Any person who willfully and unlawfully, or while in the commission of any felony, by fire or explosion, damages or causes to be damaged any structure, whether the property of himself or herself or another, under any circumstances not referred to in subsection (1), is guilty of arson in the second degree . . . ."

4

the proceedings leading to imposition of judgment on the prior conviction [from an out-of-state jurisdiction] to determine whether the offense of which the defendant was previously convicted involved conduct which satisfies all of the elements of the comparable California serious felony offense." (*People v. Myers* (1993) 5 Cal.4th 1193, 1195.)

> 2.      *The "malice" element of California arson.*

Nieves argues that California arson is a more narrow offense than Florida arson because, whereas California arson requires the defendant to have "willfully and *maliciously*" set a fire, Florida arson only requires the defendant to have "willfully and *unlawfully*" set a fire. Nieves asserts: "Florida's statute simply requires one to act unlawfully as opposed to the California statute which requires one to act maliciously. This distinction is crucial."

Upon examination, however, this turns out to be a distinction without a difference. While the Florida legislature abandoned a once-required malice element because it was too hard to prove, California courts have interpreted "malice" in the arson context to mean only the intentional igniting of a fire source in circumstances that naturally and probably would result in the burning of a structure or property.

Before 1979, one of the elements of Florida arson was malice. (See *Love v. State* (1932 Fla.) 144 So. 843, 844 ["A 'malicious' burning . . . would be such an act done with a condition of mind that shows a heart regardless of social duty and bent on mischief, evidencing a design to do an intentional wrongful act toward another, or toward the public, without any legal justification or excuse . . . . "].) However, under that statute, "arson convictions were difficult to obtain because of the problems inherent in proving malice, i.e., the defendant's evil intent. . . . [¶] In order to alleviate this problem, the Legislature substituted the word 'unlawfully' for the word 'maliciously.' Under this new wording the State need not prove an evil intent on the part of the perpetrator. It need only be shown that the willful act was done without a legitimate, lawful purpose." (*Lofton v. State* (1982 Fla.App. 4 Dist.) 416 So.2d 522, 523; see, e.g., *Berry v. State* (Fla.App. 1 Dist.,1990) 566 So.2d 22, 24 [in prosecution for burning

5

appellant's own home to collect property insurance: "With regard to the 'unlawfulness' element, the state only needed to show that the willful act was done without a legitimate, lawful purpose."].)

Although the California arson statute contains a malice element, it has been construed to mean only the intentional ignition of a fire source in circumstances that naturally and probably would result in the burning of a structure or property. "Arson's malice requirement ensures that the act is 'done with a design to do an intentional wrongful act . . . without any legal justification, excuse or claim of right.' [Citation.] Its willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire . . . . Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property. [Citations.]" (*People v. Atkins* (2001) 25 Cal.4th 76, 88-89.) Hence, our Supreme Court held in *In re V.V.* (2011) 51 Cal.4th 1020, 1030, that two minors who set off a firecracker on a dry hillside, causing a forest fire, committed arson: "Although [the minors] did not intend to set the hillside on fire, they knew that their intentional acts created a fire hazard."].)[3]

---

[3] *In re V.V.* explained that this analysis depended on the concept of "malice in law": "The statutory definition of arson is derived from the common law crime of arson as a willful and malicious burning. [Citation.] Although '[m]alice as universally understood by the popular mind has its foundation in ill-will' [citation], it need not take the form of malevolence or ill will. [Citations.] Malice in fact – defined as 'a wish to vex, annoy, or injure' [citation] – consists of actual ill will or intent to injure. [Citations.] However, ' "[t]here is still another malice, the presumption of the existence of which is raised by the law in certain cases upon certain proofs." ' [Citation.] This type of malice – malice in law – is defined . . . as 'an intent to do a wrongful act, established either by proof or presumption of law.' [Citations.] Malice in law may be 'presumed' or 'implied' from the intentional doing of the act without justification or excuse or mitigating circumstances. [Citations.] [¶] In determining whether the second type of malice ('intent to do a wrongful act') is established for arson, malice will be presumed or implied from the deliberate and intentional ignition or act of setting a fire

6

Thus, the "malice" element of California arson is satisfied by Florida's requirement that the defendant have "willfully and voluntarily" set a fire.

3. *Explosions and unintentional fires.*

However, the Florida and California arson statutes do differ in at least two respects: (1) the Florida statute appears to include unintentionally-caused fires in certain situations because it covers acts done "willfully and unlawfully, *or while in the commission of any felony*," and (2) the California arson statute only covers a defendant who "willfully and maliciously sets fire to or burns," whereas Florida arson includes causing damage "by fire or *explosion.*"

As the least adjudicated elements test alone does not prove that Florida arson is a serious felony, the Attorney General argues the trial court properly resolved this question by examining a probable cause affidavit that was part of the Florida record of conviction: "Respondent submits the least adjudicated elements test need not be resorted to because the evidence presented with regard to the Florida arson conviction established that appellant's conduct satisfied all the elements of arson under California law." The Attorney General asserts: "[B]ased on the contents of [the probable cause affidavit], there is no question that appellant's conduct in the Florida case constituted arson under California law. As the document describes, appellant entered a residence and 'set a fire within [the] structure.' An investigation revealed [a] 'burn pattern' at the scene of the fire and 'ignitable liquid' on appellant's clothing. This was sufficient evidence to support a finding that appellant's conduct involved willfully and unlawfully causing damage by fire, consistent with California law."

Nieves argues the trial court's attempt to divine the nature of the conduct underlying his Florida arson conviction by examining the probable cause affidavit was improper because "[t]he Sixth Amendment . . . precludes the court from enhancing a sentence based on facts about prior conduct not admitted by the defendant or implied

_____

without a legal justification, excuse, or claim of right. [Citations.]" (*In re V.V.*, *supra*, 51 Cal.4th at p. 1028.)

by the elements of the offense." Nieves cites *Descamps v. United States* (2013) 133 S.Ct. 2276, [186 L.Ed.2d 438] (*Descamps*), which explained why a trial court's prior-conviction "conduct" determination violates the defendant's Sixth Amendment right to a jury trial. As *Descamps* said, "We have held that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (*Apprendi*)." (*Descamps v. United States*, *supra*, 133 S.Ct. at p. 2288.)

As we will explain, Nieves is correct.

The record on appeal in this case contains the following documents from the State of Florida relating to Nieves's arson conviction: (1) a packet of documents from the Florida Department of Corrections which includes the criminal information (which merely recites that Nieves was charged with a violation of section 806.01(1)(a), in that he "did willfully and unlawfully, or while in the commission of any felony, by fire or explosion, damage . . . a dwelling"), and a copy of the Florida judgment, which merely recites that Nieves pled no contest to "arson of dwelling" in violation of 806.01(1)(a).[4] There is no record of the plea taking or any admissions by Nieves to a factual basis for his no contest plea. The only part of the record that arguably revealed the conduct underlying his Florida conviction was a probable cause affidavit apparently prepared by a Florida State Fire Marshal. It alleged that "[a]t the above residence [Nieves] did enter through a window and remained inside to set a fire within this structure. [¶] An investigation of the fire scene by Bradenton F.D. showed the burn pattern and tracking . . . to reveal this was an incendiary fire in nature and an act of arson [1st degree] . . . . [A]n ignitable liquid was detected . . . on the defendant's clothes" and there were "superficial burns to the defendant's forearms." The probable cause affidavit also stated: "Defendant was interviewed . . . but he denied any involvement."

---

[4] The name "Jose Cabrera" appearing in the Florida records was an alias.

Until recently, it would have been considered proper for the trial court to examine the probable cause affidavit in order to determine the conduct underlying Nieves's Florida arson conviction. "[F]or years trial courts in California have been allowed to determine whether a prior conviction qualifies as a strike by looking to the 'entire record of conviction.' [Citations.] But in *Descamps, supra,* 133 S.Ct. 2276, the United States Supreme Court pointed out the constitutional problems in doing so." (*People v. Saez* (2015) 237 Cal.App.4th 1177, 1199.) Agreeing with *Saez*, the Court of Appeal in *People v. Marin* (2015) 240 Cal.App.4th 1344, 1362, concluded: "*Descamps* leaves no true room for debate that this type of factfinding violates the Sixth Amendment."

In order to avoid Sixth Amendment problems, *Descamps* set forth the limited trial court inquiry that is permissible: "First, a sentencing court must determine whether the statute under which a defendant was previously convicted is ' "divisible," ' that is, one that 'sets out one or more elements of the offense in the alternative,' or ' "indivisible," ' that is, 'one not containing alternative elements.' [Citation.] If the statute is indivisible, the " 'categorical approach" limits the inquiry to a comparison of the elements of the original statute [here, Nieves's Florida arson conviction] and the generic crime [here, California arson], and 'only if the statute's elements are the same as, or narrower than, those of the generic offense' can an enhancement be imposed . . . . If, however, a statute is divisible, the ' "modified categorical approach" ' . . . permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.' [Citation.]" (*People v. Saez, supra*, 237 Cal.App.4th at pp. 1202-1203.)

As *Descamps* itself stated: "To explain when courts should resort to [the modified categorical approach], we hypothesized a statute with alternative elements – more particularly, a burglary statute (otherwise conforming to the generic crime) that

prohibits 'entry of an automobile as well as a building.' [Citation.] One of those alternatives (a building) corresponds to an element in generic burglary, whereas the other (an automobile) does not. In a typical case brought under the statute, the prosecutor charges one of those two alternatives, and the judge instructs the jury accordingly. So if the case involves entry into a building, the jury is 'actually required to find all the elements of generic burglary,' as the categorical approach demands. [Citation.]. But the statute alone does not disclose whether that has occurred. Because the statute is 'divisible' – *i.e.,* comprises multiple, alternative versions of the crime - a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for the generic (building) or non-generic (automobile) form of burglary. Hence [we] permitted sentencing courts, as a tool for implementing the categorical approach, to examine *a limited class of documents* to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." (*Descamps v. United States*, *supra*, 133 S.Ct. at p. 2284, italics in original.)

That "limited class of documents" had been set out in *Shepard v. United States* (2005) 544 U.S. 13, 16 [125 S.Ct. 1254]: "The question here is whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary. We hold that it may not, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard* held that the trial court's inquiry "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." (*Id*., at p. 26.) These are the so-called "*Shepard*-approved documents."

The Florida arson statute is broader than the California arson statute, and it is divisible. As explained above, it can be violated in several alternative ways, some of

10

which would not violate the California arson statute. The probable cause affidavit from Nieves's Florida arson conviction – which is not a *Shepard*-approved document – could not be relied upon *by the trial court* to determine which of the alternative ways of committing Florida arson was the basis for Nieves's no contest plea. The probable cause affidavit contains nothing more than allegations by a Fire Marshal about Nieves's conduct. No evidence from the plea colloquy was admitted which might demonstrate that Nieves later admitted the truth of any of these allegations. Therefore, the probable cause affidavit merely presents some information as to what Nieves's *conduct* might have been, but nothing about what he actually pled guilty to. (See, e.g., *United States v. Marcia-Acosta* (9th Cir. 2015) 780 F.3d 1244, 1255 ["[T]he *Shepard* documents in this case at most suggest that [defendant] *committed* the crime of intentional aggravated assault. They do not show that Marcia-Acosta was *convicted* of that crime."].)

Hence, there was insufficient evidence to sustain the trial court's finding that Nieves's Florida arson conviction was a serious felony for purposes of a section 667, subdivision (a), enhancement.

However, because retrial of a prior conviction allegation after a reversal for insufficient evidence is permissible (see *Monge v. California* (1998) 524 U.S. 721, 734 [118 S.Ct. 2246]; *People v. Marin*, *supra*, 240 Cal.App.4th at p. 1365), we will remand this case to the trial court for further proceedings.

11

## *DISPOSITION*

The judgment is reversed and remanded for further proceedings. The judgment is reversed as to the true finding on the prior serious felony conviction allegation arising out of Nieves's Florida arson conviction. The case is remanded to the trial court for further proceedings. If the People elect to retry the allegation, the parties should be alert to Nieves's Sixth Amendment jury trial rights. In any event, the trial court shall resentence Nieves.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

EDMON, P. J.

WE CONCUR:

ALDRICH, J.

KITCHING, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.