Filed 11/5/20  P. v. Celli CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL CELLI,<br><br>Defendant and Appellant. | F077406<br><br>(Super. Ct. No. MCR056888)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  John E. Martin, Judge.

Law Offices of Michelle T. Livecchi-Raufi and Michelle T. Livecchi-Raufi, under appointment by the Court of Appeal, for Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, Eric L. Christoffersen, and William K. Kim, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

Michael Celli was convicted of one count of indecent exposure directed at an adult woman. He argues his conviction must be reversed because the trial court erred in ruling his prior conviction for child molestation was admissible to show a propensity to commit the charged offense, the trial court further erred in failing to instruct the jury on unanimity, and the errors were prejudicial. With respect to a bifurcated trial on his prior convictions before the trial court, Celli argues he had a constitutional right to a jury trial on his prior convictions and his waiver thereof was not knowing and intelligent. He argues the trial court's true findings on various recidivist enhancement allegations must therefore be reversed and the matter remanded for retrial thereon. Finally, Celli argues two prior prison term enhancements imposed at sentencing must be stricken under Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill No. 136). We affirm the judgment with one modification, that is, one of the prior prison term enhancements imposed at sentencing is stricken.

## PROCEDURAL HISTORY

Celli was charged, by an information filed in the Madera County Superior Court, with two counts of indecent exposure (Pen. Code, § 314, subd. (1)[1]), with a previous conviction under section 288, subdivision (a). The information further alleged that Celli had suffered a prior strike conviction (§ 667, subds. (b)-(i)), and served two prior prison terms (§ 667.5, subd. (b)). Prior to trial, the court dismissed one of the indecent exposure counts.

A jury convicted Celli of the single indecent exposure count at issue. In a subsequent, bifurcated proceeding, the court found true the allegations that Celli had a prior conviction under section 288, subdivision (a), which was also a prior strike conviction, and had served two prior prison terms within the meaning of section 667.5, subdivision (b).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

The court sentenced Celli to prison for an aggregate term of eight years (the upper term of three years for the indecent exposure conviction (§§ 314, 18), doubled to six years pursuant to the Three Strikes law (§ 667, subds. (b)-(i), plus two years for the two prior prison term enhancements (§ 667.5, subd. (b)).

## FACTS

The prosecution presented two witnesses:  Elizabeth N., the complaining witness, and Madera County Sheriff's Deputy Michael Chambers.  Elizabeth described the incident underlying the charges.  Chambers, who spoke with Elizabeth about 20 minutes after the incident, gave limited testimony describing Elizabeth's demeanor at the time.

**Testimony of Elizabeth N.**

Elizabeth N. lived with her husband, Jeff, in a three-bedroom house in Raymond, in Madera County.  They had lived there for about eight years and had known Celli for that entire period.  In fact, Celli was a family friend; he knew Elizabeth's family as well.

For the last eight months or so before the instant incident, Celli had been living in a trailer on the property where Elizabeth and Jeff lived (for the first few months, until the trailer was set up with electricity, Celli lived in Elizabeth and Jeff's house).  Even after the trailer was hooked up to electricity, Celli would use the bathroom and shower at Elizabeth and Jeff's house.  He would also eat dinner with them.  And on cold nights, he would sleep in the house as well.  Celli did various chores around the property and helped Jeff with "flooring" jobs.

On July 17, 2017, Jeff left for a job in Gustine, while Elizabeth stayed home.  Gustine is a small town about one hour and 20 minutes away, by car.  Elizabeth had a headache that day and had taken prescription medication for it; she had planned to accompany Jeff but did not feel well enough.  After a nap, she watched TV for a while, before getting up to prepare dinner.  Celli also watched TV with her.  It was summer and hot, and Elizabeth saw Celli looking at her legs.

3

The house had a relatively open floor plan, with the kitchen open to the dining area at one end and the laundry area at the other end (swinging doors separated the kitchen from the laundry area). The kitchen was also open—above a counter with the kitchen sink—to the living room, which itself was between the dining area and a hallway that ultimately led to the laundry room. The bedrooms and bathroom were off the living room. There was a pantry between the living room and the laundry room. The laundry room also connected to the garage.

After watching television for a while, Elizabeth went to the kitchen and got busy with tasks involved in making macaroni and cheese from scratch for dinner. Celli "was going to take a shower." For the moment, however, Celli was leaning on the end of the kitchen counter, by the dining area, talking to her. Elizabeth, who was at the stove, saw that his khaki shorts were unbuttoned, and his penis and pubic hair were visible. Celli was overweight and had a particularly heavy stomach, but his penis was nonetheless visible. His penis was not erect. Celli, at the time, was commenting on the color of the cheese sauce Elizabeth was making for the macaroni and cheese dish.

Elizabeth was shocked at the sight of Celli's genitals; she moved away from the stove and went towards the sink but did not say anything. The prosecutor asked Elizabeth: "So in light of the fact that [Celli] told you he was going to take a shower, why did it freak you out when … you saw him like that?" Elizabeth answered: "I didn't expect to see what I had seen."

Celli thereafter walked outside Elizabeth's view for a few minutes, reappearing at the other end of the kitchen, by the laundry area (the swinging doors between the kitchen and the laundry area were open at the time). He had his legs crossed and his hands in his pockets; he looked the same, with his shorts unbuttoned and his penis visible. He did not say anything; his penis was not erect. However, he was standing (not leaning) and the position he was in "was definitely to expose his penis."

Elizabeth yelled, "'Jesus, what the – what the F are you doing, [Celli]?'" He put his hand over his crotch and "took off running" to the bathroom, which was in a separate hallway. Elizabeth ran outside, to the back, telling Celli, "'Get the hell out of my house.'" Celli said something, but Elizabeth could not recall what he said.[2] When Elizabeth yelled at Celli to leave, he left.

Elizabeth went inside to her bedroom to use the phone. While she was on the phone with a relative, she heard Celli in the house. Elizabeth testified: "I came out and told him to get the hell out of here, I was calling the police." Celli left. Elizabeth was "[s]cared [she] was going to be raped by this man." She called the police.

**Testimony of Sheriff's Deputy Michael Chambers**

Madera County Sheriff's Deputy Michael Chambers was dispatched to Elizabeth N.'s residence on the evening of July 17, 2017, in response "to a suspicious call." It took Chambers approximately 20 minutes to get there. On arrival, he talked to Elizabeth. He described his interaction with Elizabeth: "She was visibly shaking. She was crying. She had locked herself inside the house. She quite frankly appeared to be a mess."

**Defense Evidence**

The defense played a recording of the call that Elizabeth made to law enforcement authorities in connection with the incident underlying the charges. In the call, Elizabeth said that "a guy living on the property" had "kind of like, expose[d] his self in [her] house" making her "just very uncomfortable," and "all [she] want[ed] is for him to be taken out of the property." The defense sought to show that, in contrast to her demeanor with Deputy Chambers and even during trial, she was calm and composed for the duration of the call.

---

[2]     The prosecutor asked Elizabeth: "And is it your testimony that from the time he first exposed himself to you, from that back room kitchen counter to over by the swinging doors, had he ever said anything to you during that time?" Elizabeth responded: "Well, I told him to get the hell out of my house. He said something, but I can't tell you. I don't quite remember what he said."

## DISCUSSION

### I. Admission of Evidence Regarding Celli's 2004 Conviction for Lewd Act on a Child Under the Age of 14

Celli was tried before a jury on a single count of indecent exposure. He challenges the admission, in that trial, of evidence regarding his prior conviction, from 2004, for committing a lewd act on a child under the age of 14, under section 288, subdivision (a). The trial court admitted, under section 1108, evidence related to the prior conviction, to show a propensity to commit the charged sex act.

Celli argues admission of evidence regarding the prior conviction was an abuse of discretion because the prior offense—that is, lewd act on a child—was dissimilar to the charged offense, which minimized its probative value in terms of showing a propensity to commit the charged act, and, at the same time, the evidence regarding the prior offense was extremely inflammatory. The People contend that evidence regarding the prior offense was properly admitted, or even if it was erroneously admitted, the error was harmless.

Here, evidence of the prior offense was eventually admitted by way of a stipulation that sought to minimize its prejudicial effect. Given that circumstance, we agree with the People that admission of evidence related to Celli's prior conviction was ultimately harmless. We therefore affirm Celli's conviction.

#### A. Background

Prior to trial, in separate, opposing motions in limine, both parties addressed the admissibility, under sections 1108 and 352, of Celli's prior conviction, from 2004, for lewd act on a child under 14, pursuant to section 288, subdivision (a). The defense sought to exclude evidence of the prior conviction, while the prosecution sought to admit it.

The prosecution's motion in limine described the facts related to the prior conviction as reflected in the police report:

6

"Defendant was convicted of a violation of PC 288(a), committing a lewd act upon a minor child under the age of 14, in 2004.  The People are relying on Chowchilla Police Department report C2004-1150, in which a 9 year old girl reported her step grandfather, the defendant, touched her while she was in the bath.  She reported that she had been massaging him, and touched his penis.  The next day the defendant joked with her about touching his penis and then touched her while she was in the bath.  The victim told her mother, who then told the victim's grandmother (defendant's wife).  He pled guilty in November 2004 and was sentenced to 3 years state prison on or about December 23, 2004."

At the in limine motions hearing, the prosecutor addressed the court with regard to her motion seeking to admit evidence of Celli's prior conviction for lewd act on a minor child.  She said:  "I imagine the Court and Counsel's first concern would be that the prior would be of a nature that it would be substantially more inflammatory."  She added:  "I do recognize that the prior offense is dealing with a child and the instant offense is dealing with an adult."  She proposed to "offer either documentary proof of the conviction or even offer some kind of sanitized stipulation to a prior felony sex offense," noting that "would still give [her] what [she] need[ed] to argue the propensity evidence for the jury, but somewhat reduce that risk of undue prejudice from a prior 288, subdivision (a) [offense]."  The prosecutor argued:  "[T]he Falsetta[3] Court acknowledges that oftentimes these sex offenses occur when there aren't any witnesses around, and this is such an offense.  So I do believe that it's relevant and that it should come in to show his propensity, but, recognizing that we don't want to set ourselves up for an appeal, I think it would be appropriate to offer some kind of documentary proof or a stipulation to a sanitized prior."

Defense counsel vehemently opposed the prosecutor's request to admit evidence of Celli's prior conviction in any form, and specifically rejected the prosecutor's suggestion that the prior could properly be introduced in sanitized form, through stipulation or otherwise.  He argued:  "Well, Your Honor, obviously, that evidence

---

**3**    *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).

coming in under 1108 requires a 352 analysis. I think the nature of the prior 2004 conviction they wish to enter is so inflammatory compared to the weight of the current offense that it would – just fundamentally, I don't think the jury could separate the issues. And I think it would create a prejudice from which we cannot escape. And I think it would ultimately result in Mr. Celli being convicted on the 2004 charge instead of the current offense."

Defense counsel emphasized the dissimilarity in the conduct at issue in the 2004 conviction and the conduct at issue in the instant case, as well as the different circumstances at play in the two situations. He observed: "[T]he 2004 conviction was against someone under the age of 14 years old. That is not the case in the current charge. The 2004 conviction was a 288(a), and is not a 314 indecent exposure like we are dealing with now."

Defense counsel also rejected the idea that a sanitized stipulation would be an appropriate way to limit the prejudice emanating from admission of the prior conviction. He contended: "Additionally, regarding the stipulation of a prior sex offense, I think that may actually be what – we can't stipulate to that because I think that would leave the jury guessing as to what that prior sex offense was and would allow them to come to a conclusion that that sanitized record was of an offense of a similar nature. Because both of those options are excluded, we request that none of the 1108 evidence offered be admitted."

The court reserved ruling on the matter, expressing a concern about the "extremely dissimilar types of conduct" involved, that is, "the conduct alleged here" and "the conduct which apparently supports the prior conviction," which concerned a child "under different circumstances entirely."

At that point, defense counsel interjected, asking to be heard again because the issue was "absolutely critical to this case." The court granted his request. Counsel stated: "I think that any of the options put forth by the People regarding jury instruction

8

and stipulations, I don't think can truly safeguard in this case due to the gravity of the 2004 offense in comparison with the instant – with the instant case. And I just – I would like to stress that." The prosecutor responded: "And I would add on [to] that that if the Court were to opt to go with the sanitized version … if the jury hears that there's a prior felony sex offense – I mean, this is a felony sex offense. So I don't think it necessarily leads the jury to conclude that it was something much more inflammatory."

Defense counsel also made an in limine motion to the effect that objections noted during the in limine motion proceeding be treated as continuing objections for the duration of trial. Counsel clarified that his request pertained, particularly, to objections related to the evidence proffered under section 1108. The trial court granted that request.

The next day, the court and the parties further addressed the issue of the admissibility of Celli's prior section 288, subdivision (a) conviction. Defense counsel noted: "Evidence Code section 1101 … makes propensity evidence inadmissible. 1108 is a narrow exception for that. The evidence is only allowed pursuant to 1108 if a 352 analysis [is] conducted which shows that the probative value of the … uncharged offense outweighs the prejudicial effect." Counsel added: "[Here,] the gravity of that prior conviction is so heavy that to engage in that 352 analysis is – I can't see how we can find that the probative value is greater than the … prejudicial effect of that information on the jury." Counsel continued: "[I]t's important that we keep in mind that 1108 is an exception to the established 1101, and that it requires that safeguard [of the] 352 analysis that I believe must be taken seriously, as it is an exception to 1101, and that without that 352 analysis conducted, it could create a due process violation in which the defendant would be convicted on a crime that he had committed in the past and already paid his time on."

Counsel went on: "And I think it's a very unique situation. I can see how 1108 evidence as propensity evidence would be admissible under multiple scenarios. I just believe that this particular scenario with the gravity of the prior offense, the dissimilarity,

9

the fact that it – I'm sure it will inflame the jury compared to … what … the current charges are so … it's so weighted in favor of them judging him on the 288 that that 352 analysis – that's why that's there is to avoid situations in which that would occur." Counsel concluded: "And I can see in a situation – let's say it was either a progression. So a prior 314 *on a child* and then a 288 *on a child*. I could see that being allowed as propensity evidence. But because they are [even more] dissimilar [here], then I don't believe it really goes … to prove the propensity that 1108 is attempting to [include] … [¶] … I think that this is a particularly unique situation, given the dissimilarity, the fact that these are on the opposite end of sexual crime spectrums, and that it's working in a direction from the prior conviction having much more gravity than the current one." (Italics added.)

The prosecutor acknowledged the concern that "a prior child molestation is going to be seen as very inflammatory." She further noted: "I do recognize generally the past more inflammatory conduct can be seen as more prejudicial." She added: "And in light of the concerns of potential prejudice of the prior conviction, I do think it would be – I do think it would make sense to either have a documentary admission of the record or have some kind of stipulation that there was a prior sex offense." Defense counsel responded: "I think that, yes, of course, documentary evidence would blunt the effect, but I still think that the gravity of that offense compared with the current offense is such that it would be unfairly prejudicial. And I don't see the – I still haven't – I am still not grasping the probative value of it." Counsel acknowledged that he understood that "both these cases happen to be sex crimes," but observed that fact "alone is not enough for propensity evidence to be admitted through [section] 1108," as narrowed by section 352, which plays a gatekeeping role.

The court ruled that evidence of Celli's prior conviction was admissible. Specifically, the court stated: "I will allow the People to use the prior conviction for the 288 … I will not allow discussion with regard to the specifics of that crime, as that had

10

occurred, but the fact of the conviction would be permitted." The court then noted that it understood that defense counsel did not favor admitting the evidence via stipulation but suggested that the court's ruling would now militate in favor of a stipulation. The prosecutor interjected: "I would also propose, if it's more – it might be even cleaner if we just stipulate that he has a prior conviction for a non-forceable sex offense." In light of its earlier ruling that the fact of the prior conviction was admissible, the court brokered a stipulation, whereby the prosecutor informed the jury at trial: "Ladies and gentlemen of the jury, the People and the defendant hereby stipulate that the defendant has a prior conviction for a non-forceable sex offense of a dissimilar nature."

### B. Analysis

#### 1. Applicable Law

Under Evidence Code section 1101, character evidence is inadmissible when offered to prove a defendant's "conduct on a specified occasion," with the exception of "evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as … intent, … plan, … absence of mistake or accident, or [lack of reasonable belief that a victim consented to an unlawful sexual act]) other than his or her disposition to commit such an act." (*Id*. at subds. (a), (b).)

"Because evidence of other crimes may be highly inflammatory, its admissibility should be scrutinized with great care." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1007.) One purpose of the general rule against the admission of propensity evidence is to "guard[] against undue prejudice" to the defendant. (*Falsetta*, *supra*, 21 Cal.4th 903, 916.) In this context, the word "prejudice" is used in the sense of "'an emotional bias'" (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1315-1316 (*Jennings*)) or "'"of 'prejudging' a person or cause on the basis of extraneous factors."'" (*People v. Harris* (1998) 60 Cal.App.4th 727, 737 (*Harris*).)

In sexual offense cases, Evidence Code section 1108 creates an exception to Evidence Code section 1101's prohibition against propensity evidence. Under Evidence

11

Code section 1108, when a criminal defendant is accused of a sexual offense, "evidence of the defendant's commission of another sexual offense or offenses" is not excluded under section 1101, if not inadmissible under Evidence Code section 352.[4]  (Evid. Code, § 1108, subd. (a); *People v. Lewis* (2009) 46 Cal.4th 1255, 1286 (*Lewis*) ["Evidence Code section 1108 authorizes the admission of evidence of a prior sexual offense to establish the defendant's propensity to commit a sexual offense, subject to exclusion under Evidence Code section 352."].)  For purposes of Evidence Code section 1108, "'sexual offense'" includes sexual assault, lewd acts on a minor, unlawful sexual intercourse with a minor, rape by coercion, forcible rape, production of child pornography, exhibiting pornography to a minor, and indecent exposure, among several other offenses.  (*Id*. at subd. (d)(1)(A).)  "Thus, the admissibility of uncharged conduct pursuant to section 1108 turns on the existence of a preliminary fact—namely, that the uncharged conduct constitutes a statutorily-enumerated 'sexual offense.'" (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353 (*Jandres*), citing *People v. Lucas* (1995) 12 Cal.4th 415, 466 ["Sometimes the relevance of evidence depends on the existence of a preliminary fact."].)

The California Supreme Court has held Evidence Code section 1108 passes constitutional muster because "the provision preserves trial court discretion to exclude

---

**4**    "[T]he 'Legislature has determined that the policy considerations favoring the exclusion of evidence of uncharged sexual offenses are outweighed in criminal sexual offense cases by the policy considerations favoring the admission of such evidence.  The Legislature has determined the need for this evidence is "critical" given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial….'  [Citations.]  [¶]  Accordingly, when a defendant is charged with a sexual offense, evidence of his or her uncharged sexual misconduct is no longer subject to the general prohibition against character evidence.  [Citation.]  'With the enactment of [Evidence Code] section 1108, the Legislature "declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness."'"  (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 403-404, fn. omitted.)

the evidence [of an enumerated uncharged sexual offense] if its prejudicial effect outweighs its probative value" under Evidence Code section 352.[5] (*Falsetta*, *supra*, 21 Cal.4th at pp. 907, 917-918 [Evidence Code 1108 is saved from due process defects because "section 352 affords defendants a realistic safeguard in cases falling under section 1108"]; *People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1119 (*Nguyen*) ["[t]he *Falsetta* court saved section 1108 from constitutional infirmity" by "assuming the trial court would" apply Evidence Code section 352 to ensure that inflammatory evidence of limited probative value was not presented to the jury]; *Jennings*, *supra*, 81 Cal.App.4th, 1314 ["A careful weighing of prejudice against probative value under [Evidence Code section 352] is essential to protect a defendant's due process right to a fundamentally fair trial."].)  Because Evidence Code section 352 stands between Evidence Code section 1108 and unconstitutionality (*Falsetta*, *supra*, 21 Cal.4th at pp. 917-918), in applying Evidence Code section 352 in the context of Evidence Code section 1108, a trial court must do more than simply rubber stamp the admission of evidence of prior sexual offenses the prosecution proposes to introduce.  (See *Harris*, *supra*, 60 Cal.App.4th at p. 737.)  Rather, in exercising discretion, "'because other-crimes evidence is so inherently prejudicial, its relevancy is to be "examined with care,"'" (*ibid*.), and it is to be received with the "utmost caution."  (*People v. Mullens* (2004) 119 Cal.App.4th 648, 666 ["the risk of serious prejudice is greater in a case such as this one in which propensity evidence is admitted under section 1108, than in a case in which evidence of prior bad acts is admitted under section 1101[, subd.] (b)"]; see *People v. Evers* (1992) 10 Cal.App.4th 588, 599.)

---

[5]      Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Evidence Code section 352 gives a court the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  A trial court's Evidence Code section 352 ruling is reviewed for abuse of discretion.  "Discretion is delimited by the applicable legal standards, a departure from which constitutes an 'abuse' of discretion.  [Citation.]  'The discretion intended ... is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles.  It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.'"  (*Harris*, *supra*, 60 Cal.App.4th at pp. 736-737.)  "The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair."  (*Falsetta*, *supra*, 21 Cal.4th at p. 913.)

The factors to be considered by a trial court in conducting the Evidence Code section 352 weighing process depend upon "the unique facts and issues of each case."  (*People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1097-1098  (*Miramontes*).)  However, "five factors stand out as particularly significant in an Evidence Code section 1108 case.  These factors are:  (1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time."  (*Nguyen*, *supra*, 184 Cal.App.4th at p. 1117.)  "A trial court balances this first

14

factor, i.e., the propensity evidence's probative value, against the evidence's prejudicial and time-consuming effects, as measured by the second through fifth factors." (*Ibid.*) Importantly, "because Evidence Code section 1108 conditions the introduction of uncharged sexual misconduct or offense evidence upon whether it is admissible under Evidence Code section 352, any valid objection to such evidence, as well as any derivative due process claim, necessarily depends on whether the trial court sufficiently and properly evaluated the proffered evidence under that section." (*Miramontes*, *supra*, 189 Cal.App.4th at p. 1097.)

### 2. *The Trial Court's Evidence Code Section 352 Inquiry*

In this case, where Celli was on trial for the charge of indecent exposure to an adult woman committed in 2017, the prosecution sought to introduce evidence of his 2004 conviction for lewd act on a child under the age of 14. Since both offenses are sexual offenses for purposes of Evidence Code section 1108, the threshold showing was satisfied, but admissibility of the evidence hinged on the application of Evidence Code section 352, which required the court to weigh its probative value against its potential for undue prejudice.

Evidence Code section 1108 permits admission of evidence of uncharged sexual offenses, subject to exclusion under Evidence Code section 352, as "proof of the defendant's disposition *to commit the charged offense*." (*Miramontes*, *supra*, 189 Cal.App.4th at pp.1096-1097, italics added.) Thus, it stands to reason that, for purposes of Evidence Code sections 1108 and 352, "if the prior offenses are very similar in nature to the charged offenses, the prior offenses have greater probative value in proving propensity to commit the charged offenses." (*People v. Branch* (2001) 91 Cal.App.4th 274, 285 (*Branch*); *People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274 ["'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.'"]; *People v. Soto* (1998) 64 Cal.App.4th 966, 989 (*Soto*) ["'A defendant with a

15

propensity to commit *acts similar to the charged crime* is more likely to have committed the charged crime than another.'" (Italics added.)].)

Here, the court and the parties acknowledged that the prior and present crimes were not all that similar. The prosecutor's motion in limine explicitly stated: "[T]he People [will] not be arguing the uncharged conduct is similar to the charged conduct." The trial court, for its part, also expressly acknowledged there was a "great dissimilarity between the current offense and the prior," with the respective offenses encompassing "extremely dissimilar types of conduct." It is clear the crimes were dissimilar on multiple levels. They were dissimilar in *the type of act involved* (sexual touching or battery in the prior offense as opposed to a no-contact offense in the current case), *severity* (a child molestation prior as opposed to a current charge of indecent exposure to an adult), and *choice of victim* (a very young child in the prior offense as opposed to a mature woman in the present offense).

At the same time, it has been recognized that ""'[m]any sex offenders are not 'specialists,' and commit a variety of offenses which differ in specific character.'"" (*Soto*, *supra*, 64 Cal.App.4th at p. 984.) And here, a connection existed between the prior and present offenses in terms of their respective mental or intent elements[6] as both

---

[6]    In this case, for analytical purposes, the distinction between propensity and intent is blurred; the issue is how the prior offense related to the charged offense and the extent to which commission of the prior offense tended to show Celli was guilty of the crime of indecent exposure, rather than the situation being accidental, inadvertent, or unwitting. (See *United States v. Pollock* (11th Cir. 1991) 926 F.2d 1044, 1048 ["[W]hat appears to one person as propensity may be intent to another; the margin between is not a bright line."].) Stated differently, regarding evidence admitted under Evidence Code section 1108, "[t]he object is to allow 'rational assessment by juries of evidence so admitted. This includes consideration of the other sexual offenses as evidence of the defendant's disposition to commit such crimes, and for its … bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense.'" (*People v. Earle* (2009) 172 Cal.App.4th 373, 397 (*Earle*).)

offenses require "lewd" intent.**7** (See *In re Smith* (1972) 7 Cal.3d 362, 366 [indecent exposure "requires proof … that the actor not only meant to expose himself  but intended by his conduct to direct … attention to his genitals for purposes of sexual arousal, gratification, or affront"]; *People v. Martinez* (1995) 11 Cal.4th 434, 442, 444 [noting, with respect to offense of lewd act on a child, that "a 'touching' of the victim is required, and that sexual gratification must be presently intended at the time such 'touching' occurs"].)

Although dissimilarity is the "principal factor" that bears on probative value, other factors that may enhance the probative value of the prior offense are close temporal proximity between it and the charged offense and the extent to which the source of the evidence is independent of the charged offense.  (*Hollie*, *supra*, 180 Cal.App.4th at p. 1274.)  Here, although the prior and current offenses do not appear to have occurred close in time, Celli was incarcerated for much of the intervening period between the two crimes; accordingly, this factor does not have much significance, either way, in assessing the probative value of the prior offense.  The source of the evidence of the prior offense, however, was clearly independent of the charged offense, enhancing its probative value.

The probative value of the prior offense evidence is weighed against its potential for prejudice.  More specifically, we weigh the probative value of the uncharged offense evidence against its inflammatory nature, remoteness, the risk of confusing the jury, and the time required to present the evidence.  Here, defense counsel argued the uncharged offense— a child molestation offense, with a victim under the age of 14—was highly

---

**7**     Section 288, subdivision (a), punishes "any person who willfully and lewdly commits any lewd or lascivious act … upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."

Section 314, subdivision (1), punishes "[e]very person who willfully and lewdly … [e]xposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby."

inflammatory, relative to the charged offense (indecent exposure to an adult). (See *Jennings*, *supra*, 81 Cal.App.4th at p. 1315-1316 [for purposes of Evid. Code, § 352, the word "prejudice" is used in the sense of "'an emotional bias'"].) However, the prosecutor presented the options of admitting simply the bare fact of the prior conviction by means of documentary evidence or a stipulation, so as to minimize its potential for prejudice.[8] As for remoteness of the uncharged offense, as noted above, the prior offense was neither particularly close in time to the charged offense, nor particularly remote. Finally, since Celli was convicted of the prior offense and the prosecutor proposed to introduce documentary evidence of that conviction to establish the prior conduct, there was little risk the jury would seek to punish Celli for the prior conduct; nor did it appear that the introduction of the evidence would take a significant amount of time.

The trial court clearly realized there were competing imperatives at play in assessing the admissibility of the prior offense evidence and wrestled with the decision as to whether to admit evidence of the prior offense. The court ultimately ruled that only "the fact of the [prior] conviction would be permitted." Furthermore, the record reflects both the prosecutor and the court understood and were concerned about the dissimilarity between the prior and present offenses, as well as the inflammatory potential of the prior offense. The court's restrictive ruling reflected an effort to *limit* the prejudicial effect emanating from the prior offense, a goal the prosecutor was also keen to achieve. Indeed, immediately after the court ruled, the prosecutor interjected, "I would also propose, if it's more – it might be even cleaner if we just stipulate that he has a prior conviction for a non-forceable sex offense." The prosecutor was concerned that revealing the name and

---

**8**     Documentary evidence of the prior conviction would presumably consist of the operative charging document and the abstract of judgment. The abstract of judgment for the 2004 offense stated that the offense of conviction was "Lewd act on a child under the age of 14," pursuant to section 288, subdivision (a). Thus, the documentary evidence would inform the jury of the name and nature of the prior offense.

nature of the prior offense, as reflected in the abstract of judgement and other documentary evidence thereof, would be too inflammatory.

Ultimately, the parties worked out a stipulation and the prosecutor informed the jury at trial: "Ladies and gentlemen of the jury, the People and the defendant hereby stipulate that the defendant has a prior conviction for a non-forceable sex offense of a dissimilar nature." In light of this turn of events, we need not dwell further on the court's actual ruling. Rather, we will consider whether the admission of the evidence of Celli's prior conviction for child molestation in the form of the stipulation set forth above, was prejudicial.

### 3. *Prejudice*

Initially, we note that admission of evidence of the prior conviction in the form of the stipulation did not violate due process. It took mere seconds for the prosecutor to read the stipulation into the record at the close of the prosecution's case. The jury was not informed of the actual nature of the prior conviction, thereby reducing the potential of this evidence to inflame the passions of the jury. Nor did the prosecutor dwell on this evidence in closing argument in a way that would amplify its inflammatory potential to the point of triggering due process concerns. (*Falsetta*, *supra*, 21 Cal.4th at p. 913 [ordinarily, even erroneous admission of evidence does not offend due process unless it is so prejudicial as to render the proceeding fundamentally unfair].)

We must next address whether admission of the stipulation prejudiced the verdict under the *Watson* standard. (*People v. Watson* (1956) 46 Cal.2d 818, 836-837 (*Watson*).) In general, "the application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution, and thus we review allegations of error under the 'reasonable probability' standard of *Watson*." (*People v. Marks* (2003) 31 Cal.4th 197, 227.) In line with this general rule, and short of a finding of a due process violation, courts have applied *Watson* to the erroneous admission of unduly prejudicial sexual offense propensity evidence. (See *Harris*, *supra*, 60 Cal.App.th at p. 741; *People v.*

*Mullens* (2004) 119 Cal.App.4th 648, 659 ["Error in the admission or exclusion of evidence [under Evidence Code section 1108] following an exercise of discretion under [Evidence Code] section 352 is tested for prejudice under the *Watson* harmless error test."]; *Jandres*, *supra*, 226 Cal.App.4th at p. 357 [same].)  Under the *Watson* standard, prejudicial error exists where it is "'reasonably probable'" that a result more favorable to the appealing party would have been reached in the absence of error.  (*Harris*, *supra*, 60 Cal.App.4th at p. 741.)

To determine what the "jury is *likely* to have done in the absence of" the challenged evidence, we consider the relative strength of "the evidence supporting the existing judgment" as compared to the "evidence supporting a different outcome." (*People v. Breverman* (1998) 19 Cal.4th 142, 177.)  Here, the evidence supporting the existing judgment was extremely strong relative to the evidence supporting a different outcome.

As to the offense of indecent exposure, the jury was instructed:

> "To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant willfully exposed his genitals in the presence of another person or persons who might be offended or annoyed by the [defendant's] actions; and, two, when the defendant exposed himself, he acted lewdly by intending to direct public attention to his genitals for the purpose of sexually arousing or gratifying himself or another person or sexually offending another person.  [¶]  Someone commits an act willfully when he or she does it willingly or on purpose .…  [¶]  The defendant is not guilty of indecent exposure if he acted … without the intent required for that crime, but acted instead accidentally.  You may not find the defendant guilty of indecent exposure unless you are convinced beyond a reasonable doubt that he acted with the required intent."

As to the propensity evidence, the court instructed the jury with a modified version of CALCRIM No. 1191A, the pattern jury instruction on sexual propensity evidence:

> "The People have presented evidence that the defendant committed a prior non-forceable sex offense of a dissimilar nature that was not charged in this case.  The People and the defendant have stipulated that the defendant was convicted of that prior crime.  If you decide that the

20

defendant committed other sexual offenses, you may consider that evidence and weigh it together with all the other evidence received during trial to help you determine whether the defendant committed indecent exposure.

"Remember, however, that evidence of another sexual offense is not sufficient alone to find the defendant guilty of indecent exposure. The People must still prove each charge of indecent exposure beyond a reasonable doubt."

Here, Elizabeth's testimony was clear and consistent; it was fully corroborated by the 911 call she made at the time of the incident itself. Elizabeth testified she was dumbfounded when she saw Celli leaning on the kitchen counter by the dining room with his penis exposed. However, when Celli showed up at the other end of the kitchen, by the laundry room, he was closer to her and stood in a provocative pose that left no doubt as to his intentions. Elizabeth said: "The second time, he was closer. And the standing position that he was in was definitely to expose his penis." When Elizabeth yelled at Celli, he did not offer an explanation that assuaged Elizabeth's horror. On the contrary, the fact that Celli immediately covered his crotch and ran indicated he knew his fly was open. Elizabeth knew Celli well and treated him like a family member; had there been any room for doubt as to his intentions, there is every indication she would have given him the benefit of the doubt.

The circumstantial evidence also supported Elizabeth's account and perception of the situation. Elizabeth's husband, Jeff, had left that day to do a job in Gustine, which was "approximately an hour and 20 minutes away" by car, from Raymond, where Elizabeth and Jeff lived. Before the incident, Elizabeth saw Celli looking at her legs in an "unusual" and "strange" way, causing her to reflexively adjust the summer dress she was wearing at the time. The video of Elizabeth's house shown to the jury revealed that the communal areas of the house were quite compact, whereby Celli was necessarily in close proximity to Elizabeth when he stood, first on one side and then on the other side, of the kitchen, with his shorts unbuttoned and his penis visible. Deputy Michael

21

Chambers, who responded to the 911 call placed by Elizabeth at the time, testified that Elizabeth was extremely distraught and shaken by the incident.

The prosecutor persuasively argued, referring to Celli: "This is someone who [Elizabeth] called a family friend. Someone they were close to. Someone she and her husband trusted so much they [had] given [him] a key to the house. What does it take to call the police on someone that you have been friends with for five years, that you have known for eight years, that you invited into your home, that you trust so much that you give them a key? I would submit we saw the answer when we saw her testify." The prosecutor added: "I would submit that for a woman who had testified that this man had lived on her property for several months, up to eight, someone she had known for five years, who would shower in her home, who would bathe in her home, for her – why would she freak out so much about this person if he had just accidentally undone his pants?" The prosecutor went on: "She told you why that was – she told you why that was. She told you that earlier that day, he had been staring at her legs. He made her feel uncomfortable. He had never done that before. And then her husband was gone, she is cooking dinner, and this happens. This was a different situation for her. This had not come up before." As for the evidence regarding Celli's prior sex offense, while the prosecutor made a few scattered references to this evidence, she did not belabor it or make it a focus of her closing argument.[9]

_____

[9]     In her closing argument, the prosecutor referred to the prior offense evidence in connection with the intent element of the indecent exposure charge, telling the jury to consider the prior offense in assessing the proof of this element. She told the jury it could weigh the evidence of the prior offense along with all the other evidence. Thus, at one point, the prosecutor argued: "As you may recall, towards the end of my case I stood up and I told you that the People and the Defense had stipulated that the defendant had a prior conviction for a non-forceable sexual offense of a dissimilar nature. That's what that means. That means that the Defense and I are both agreeing that that fact is true. And that means that you as the jury must also accept it as true when you are going through all the evidence. And we will talk in a little bit more about why that is important and what you can use it for as well as what you can't use it for." She subsequently added, inter alia: "And when you go back there [to deliberate] and you are asking

The defense theory of the case was that the exposure was accidental. Counsel argued: "And I ask you, is there more evidence there that an accident occurred or that [Celli] purposefully directed public attention to his genitals? Is covering them and running away more an indication of an accident or an intentional act?"[10] However, there was no evidence at trial to indicate that Celli ever explained to Elizabeth that what had transpired was an accident.

Given the strength and consistency of the prosecution's case, we cannot say that absent the stipulation regarding Celli's prior offense, the result of the proceeding would have been different. On the instant record, we reject Celli's argument that the fact the stipulation omitted the name and nature of the offense impaired the jury's ability properly to assess its weight and enhanced its prejudicial effect to the point of rendering it prejudicial under the *Watson* standard. (*Watson*, *supra*, 46 Cal.2d at pp. 836-837.)

Finally, we also reject Celli's argument that Evidence Code section 1108 itself violates due process and is therefore unconstitutional. This claim is foreclosed by our Supreme Court's *Falsetta* decision. (*Falsetta*, *supra*, 21 Cal.4th at p. 917 ["the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge"]; *Auto Equity Sales, Inc. v. Superior Court*

---

yourself, 'Well, did he expose his penis? Did he do it with that lewd intent,' the jury instruction is telling you you can consider [the prior offense] when you are deciding, 'Was he exposing himself? Was he doing it for his own jollies? For his own sexual gratification?' And I would submit to you based on the evidence that you have heard, this was a situation where he was doing that."

[10]     Defense counsel addressed the prior conviction evidence as follows:

> "Where is the evidence that [Celli] willfully did that, other than the fact that they are offering [Celli] has a prior conviction? And, yeah, [Celli] has a prior conviction. [Celli] was convicted of a non-forceful sexual offense of a dissimilar nature. So what's important about that? Does that mean that they met all of those burdens? Does that mean they met every one of those elements? I don't think it does … it's going to come down to you deciding."

23

(1962) 57 Cal.2d 450, 455 [California Supreme Court precedent is binding on lower state courts].)

## II. *Unanimity Instruction*

Celli argues the trial court erred in not giving, sua sponte, a unanimity instruction to the jury. We disagree that a unanimity instruction was required. We further conclude that, even assuming a unanimity was required, the court's failure to give one was harmless in this instance.

"In a criminal case, a jury verdict must be unanimous. [Citations.] … [Citations.] Additionally, the jury must agree unanimously the defendant is guilty of a specific crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "Therefore, when the evidence suggests more than one discrete crime, either (1) the prosecution must elect among the crimes or (2) the trial court must instruct the jury that it must unanimously agree that the defendant committed the same criminal act." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.'" (*People v. Russo*, *supra*, at p. 1132.)

However, "[n]either instruction nor election are required … if the case falls within the continuous course of conduct exception." (*People v. Thompson* (1984) 160 Cal.App.3d 220, 224.) "This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when … the statute contemplates a continuous course of conduct of a series of acts over a period of time." (*Ibid.*) "[A] trial court should give the [unanimity] instruction sua sponte where the circumstances of the case so dictate." (See *People v. Carrera* (1989) 49 Cal.3d 291, 311, fn. 8.)

Here, the district attorney initially charged Celli with two counts of indecent exposure. (§ 314, subd. (1).) In a pretrial motion, Celli's trial counsel moved the court

to "amend the Information" to reflect "a single count" of indecent exposure. After hearing arguments and viewing a video showing the layout of Elizabeth's house, the court determined there was one exposure or "one event" for purposes of the indecent exposure statute. The court then dismissed one of the counts of indecent exposure and the district attorney amended the information accordingly.

The court and the parties discussed the issue of whether a unanimity instruction would be required, with the court reserving a ruling on the issue. Both parties agreed with the court's assessment that a unanimity instruction would likely not be required. After the presentation of evidence, the court briefly conferred with counsel outside the presence of the jury regarding any outstanding issues with regard to jury instructions. When the jury returned to the courtroom, the court proceeded to instruct the jury. Defense counsel did not request, and the court did not give, an instruction on unanimity.

On the instant record, the trial court was not required to instruct the jury on unanimity. The communal areas of Elizabeth's house were interconnected, reflecting an open floor plan. The kitchen was open to the dining room at one end and the laundry room at the other end. In addition, the kitchen was open, above a counter, to the living room, which itself lay between the dining room at one end and a hallway leading to the laundry room at the other end. Elizabeth testified that she was cooking in the kitchen at the relevant time. She first saw Celli on the side of the kitchen that is open to the dining room; Celli was leaning on the end of the counter on that side. His shorts were unbuttoned, and his penis was visible. Celli then simply walked from the dining room to the laundry room, reappearing, within minutes, in the doorway between the kitchen and the laundry room, in exactly the same condition, that is, with his shorts unbuttoned and his penis visible.

Under these circumstances, there was essentially only one transaction for purposes of the offense of indecent exposure. (See *People v. Smith* (2012) 209 Cal.App.4th 910, 915 ["The language of the [indecent exposure] statute prohibits the exposure itself and

25

not the specific exposure to a person."].)  In other words, the fact that Celli was standing at one end of the kitchen and then reappeared at the other end, represents a situation where his "acts [were] so closely connected that they form part of one and the same transaction, and thus one offense."  (*People v. Thompson, supra,* 160 Cal.App.3d at p. 224; *People v. Smith*, *supra*, 209 Cal.App.4th at p. 916 [only one offense of indecent exposure occurred where "there may have been a break between *observations* of defendant" but there was "no evidence that he ever pulled up his pants"].)  Since the evidence supported only one discrete offense, committed by means of a continuous course of conduct, a unanimity instruction was not required.

In any event, even were we to assume a unanimity instruction was required, under the circumstances, the court's failure to give such an instruction was harmless beyond a reasonable doubt.  (*People v. Wolfe* (2003) 114 Cal.App.4th 177, 186 [we must reverse the judgment based on the failure to give a unanimity instruction unless the error is harmless beyond a reasonable doubt].)  "'[W]here the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place, the instruction is not necessary to the jury's understanding of the case.'"  (*People v. Beardslee* (1991) 53 Cal.3d 68, 93.)  Under such circumstances, our Supreme Court has held that the unanimity instruction is either not required or its absence is harmless.  (*People v. Davis* (2005) 36 Cal.4th 510, 562.)

In the instant situation, the jury had no basis to distinguish between the two times that Elizabeth saw Celli's penis—once by the dining room and once by the laundry room.  The prosecution made no effort to draw a distinction between these instances in terms of the underlying evidence.  Similarly, there was no divergence in Celli's defense as to the two instances.  Nor was there any evidence suggesting Celli exposed himself at one end of the kitchen but not the other.  Thus, to the extent the jury believed Celli exposed himself at one end of the kitchen, it would inexorably have believed he exposed himself at the other end as well.  (*People v. Napoles* (2002) 104 Cal.App.4th 108, 119 ["The

erroneous failure to give a unanimity instruction is harmless if disagreement among the jurors concerning the different specific acts proved is not reasonably possible."]; *People v. Thompson* (1995) 36 Cal.App.4th 843, 853 ["Where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless."].)

We conclude that, under the circumstances, either no unanimity instruction was required, or its absence was harmless beyond a reasonable doubt.

### III.    *Celli's Waiver of Jury Trial as to his Prior Convictions*

Celli argues the trial court erred in failing to ensure his waiver of the right to a jury trial with regard to the fact of his prior convictions (for purposes of recidivist sentence enhancement allegations attached to the indecent exposure charge) was knowing and intelligent.  He contends the recidivist sentence enhancement allegations must therefore be reversed and the matter remanded for retrial thereon.  We reject Celli's contention that the trial court committed reversible error in putatively failing to ensure that Celli's waiver of jury trial as to the fact of his prior convictions was knowing and intelligent.

#### A.  Background

Prior to trial on the charged offense, both parties motioned to bifurcate the trial on the recidivist sentence enhancement allegations attached to the substantive charge. Defense counsel then requested a court trial on the fact of the prior convictions.  On the issue of bifurcation, counsel informed the court:  "We are moving to bifurcate, Your Honor.  And we would be requesting a Court trial regarding the prior convictions.  I have discussed the options with Mr. Celli, and he agrees that the Court trial would be the best." The court granted the motion.

Three weeks after completion of the jury trial on the indecent exposure charge, a court trial was held to determine whether Celli had suffered the prior convictions alleged

27

in the information. Celli did not object when the jury was dismissed after rendering its verdict on the substantive charge, nor did he object to commencement of the court trial. The court found that Celli had suffered two prior convictions, one under section 288, subdivision (a), and one under Health & Safety Code, section 11377, for purposes of recidivist sentence enhancement allegations.

Celli argues he had a federal constitutional right to a jury trial on the fact of his prior convictions. However, there is no federal or state constitutional right to a jury trial on the fact of a prior conviction, for purposes of recidivist sentence enhancements. Rather, a defendant has a statutory right to jury trial as to the fact of a prior conviction. (*People v. Gallardo* (2017) 4 Cal.5th 120, 125 (*Gallardo*) [a defendant has "a statutory right to jury trial on 'the question of whether or not the defendant has suffered the prior conviction'—though not 'whether the defendant is the person who has suffered the prior conviction'"]; *People v. Mosby* (2004) 33 Cal.4th 353, 360 [citing *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*) and *People v. Epps* (2001) 25 Cal.4th 19, 23 (*Epps*)]; see §§ 1025, subds. (b) & (c); 1158.) Celli candidly acknowledges that applicable caselaw establishes that the right to a jury trial on "the factual determination of whether a defendant has suffered a prior conviction" is "purely statutory in origin." (See *Gallardo*, *supra*, 4 Cal.5th at p. 138 [a trial court's determination of the fact of a prior conviction does not implicate constitutional rights].) Celli further notes that, "given the ever-evolving changes in the law," he simply seeks to "preserve[] his state and federal appellate rights by raising the issue."

"The requirement of an express waiver applies to the constitutional right to a jury trial, but not to jury trial rights that are established only by statute." (*People v. French* (2008) 43 Cal.4th 36, 46.) The limited statutory right to a jury on the fact of a prior conviction can be waived by a failure to object, and, *a fortiori*, by counsel's express waiver. (See *People v. Grimes* (2016) 1 Cal.5th 698, 737-738 [absent an objection to the discharge of the jury or commencement of court trial, a defendant is precluded from

asserting on appeal, a claim of ineffectual waiver of the statutory right to jury trial on the fact of a prior conviction in connection with recidivist enhancement allegations]; *People v. Saunders* (1993) 5 Cal.4th 580, 589-590; see also *People v. Vera* (1997) 15 Cal.4th 269, 275-276 ["It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided."], overruled in part, on other grounds, by *People v. French*, *supra*, at p. 47, fn. 3.)  Here, there was no objection by Celli to the court deciding the fact of his prior convictions; indeed, defense counsel expressly waived the statutory right to jury trial on the issue.

In any event, to the extent the court erred in failing to elicit from Celli an express waiver of the statutory right to a jury trial on his prior convictions and, further, failing to ensure that such a waiver was knowing and intelligent, the error was harmless.  Since the error at issue concerns a state statutory right, the *Watson* standard of prejudice applies. (See *Epps*, *supra*, 25 Cal.4th at pp. 28-29; *Watson, supra,* 46 Cal.2d at p. 836.)  The prosecution adduced as evidence of each of Celli's two prior convictions, separate section 969B packets (969B packets) from the California Department of Corrections and Rehabilitation, which contained, respectively, the relevant abstract of judgments, photographs of Celli, fingerprint cards, FBI criminal histories, and relevant incarceration histories.  Celli did not present any evidence and submitted the matter without argument. Under these circumstances, even if the factfinder was a jury, rather than the court, it is not reasonably probable that Celli would have obtained a more favorable result.  (See *Epps*, *supra*, 25 Cal.4th at pp. 29-30 [fact of prior convictions was presumptively established from official government documents clearly describing alleged convictions]; see also *id*. at p. 32 (conc. opn., Werdegar, J.) ["absent the remote possibility of nullification, no reason exists to believe a jury might have reached a different result than the court"].)

Celli next argues that under *Apprendi*, *supra*, 530 U.S. 466, *Descamps v. United States* (2013) 570 U.S. 254 (*Descamps*), and *Gallardo*, *supra*, 4 Cal.5th 120, he had a constitutional right to have a jury determine whether his prior conviction under section 288, subdivision (a), constituted a strike, and whether he was the person who had suffered this conviction in the first place. This contention has no merit.

A defendant has a statutory right to a jury trial to "'determine only whether he or she "'suffered'" the alleged prior conviction,'" (*Epps*, *supra*, 25 Cal.4th at p. 23), not the legal effect of that conviction, such as whether the prior conviction constituted a strike (*People v. Kelii* (1999) 21 Cal.4th 452, 455-456) or whether the prior conviction is subject to the five-year serious felony enhancement under section 667, subdivision (a) (*People v. Williams* (2002) 99 Cal.App.4th 696, 700-701). Instead, these legal questions "are matters to be determined by the court." (*People v. Williams, supra,* at pp. 700-701; *Gallardo*, *supra*, 4 Cal.5th at pp. 125, 138-139 [legal determinations premised on prior convictions "are to be made by the court, rather than by the jury, based on a review of the record of the prior criminal proceeding"].)

In *Gallardo*, our Supreme Court again clarified that a trial court could properly determine whether a defendant had suffered a prior conviction, without implicating the defendant's constitutional right to a jury trial (indeed Celli acknowledges in his reply brief that under existing law there is no constitutional right to a trial on the fact of a prior conviction). (*Gallardo*, *supra*, 4 Cal.5th at p. 138 [a defendant has no categorical right to a jury trial on the fact of a prior conviction].) *Gallardo* also reaffirmed that "determinations about the nature of prior convictions are to be made by the court, rather than a jury, based on the record of conviction." (*Ibid.*) However, *Gallardo* clarified, based on *Apprendi* and *Descamps*, that the trial court's role in determining whether a prior conviction constituted a serious felony or a strike, was more limited than was previously recognized in California caselaw.

30

Specifically, *Gallardo* held: "The trial court's role is limited to determining the facts that were necessarily found in the course of entering the conviction. To do more is to engage in 'judicial factfinding that goes far beyond the recognition of a prior conviction.'" (*Gallardo*, *supra*, 4 Cal.5th at p. 134, quoting *Descamps*, *supra*, 570 U.S. at p. 269.) Consequently, in *Gallardo*, the California Supreme Court overruled its prior decision in *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*), explaining: "While a sentencing court is permitted to identify those facts that were already necessarily found by a prior jury in rendering a guilty verdict or admitted by the defendant in entering a guilty plea, the court may not rely on its own independent review of record evidence to determine what conduct 'realistically' led to the defendant's conviction." (*Gallardo*, *supra*, 4 Cal.5th at p. 124.) *Gallardo* found the trial court there could not, consistent with the Sixth Amendment, make disputed factual determinations based on the preliminary hearing transcript from the prior proceeding to find that the defendant's prior conviction qualified as a strike. (*Gallardo*, *supra*, 4 Cal.5th at p. 137 [by relying on "the preliminary hearing transcript [from the prior proceeding] to determine the 'nature or basis' of defendant's prior conviction, the sentencing court engaged in an impermissible inquiry to determine '"what the defendant and state judge must have understood as the factual basis of the prior plea"'"].) In sum, based on *Apprendi* and *Descamps*, *Gallardo* circumscribed, consistent with the Sixth Amendment, the trial court's role, and the evidence it can properly consider, in determining whether a prior conviction satisfies the requirements of any applicable recidivist enhancement statute.

Here, the trial court determined that Celli had suffered a prior conviction under section 288, subdivision (a), based on evidence of the conviction contained in the relevant section 969B packet. A section 288, subdivision (a) offense is specified as a serious felony in section 1192.7, subdivision (c)(6), and is, in turn, automatically a strike conviction. (See *People v. Nguyen* (2017) 18 Cal.App.5th 260, 266-267 ["every prior serious felony conviction is *necessarily* also a strike prior"]; see also §§ 667, subds. (a)(1)

31

& (4), (d)(1) & (2); 1170.12, subd. (b)(1) & (2).)  Therefore, in finding that Celli had suffered a prior conviction under section 288, subdivision (a) that constituted a prior strike, the court did not need to, nor did it, engage in any factfinding beyond determining the fact of the prior conviction.  Rather, upon determining that Celli had suffered a prior section 288, subdivision (a), the question as to whether the prior conviction was a strike was simply a legal, not a factual, one.  The court did not consider record evidence pertaining to the factual details of the conduct underlying the prior conviction, in settling the question.  Accordingly, the court did not run afoul of *Descamps* and *Gallardo*.

Celli has, furthermore, forfeited any claims based on *Descamps* and its progeny. *Descamps* was decided in 2013, well before Celli's trial, which took place in December 2017.  Indeed, several California courts, including this court, had ruled, also well before Celli's trial, that *Descamps* had restricted the scope of permissible judicial factfinding regarding the facts underlying a prior conviction for purposes of imposing recidivist enhancements and, thereby, had effectively overruled *McGee*.  (See *People v. Navarette* (2016) 4 Cal.App.5th 829, 854; *People v. Saez* (2015) 237 Cal.App.4th 1207-1208; *People v. Marin* (2015) 240 Cal.App.4th 1344, 1348;[11] *People v. Denard* (2015) 242 Cal.App.4th 1012, 1033-1034.)  Celli did not object, based on *Descamps*, or any of the California cases applying *Descamps*, to the effect that the trial court engaged in prohibited judicial factfinding during the bifurcated trial on the prior conviction allegations at issue in his case.  Accordingly, he has forfeited, for purposes of appeal, any claim to the effect the trial court engaged in factfinding of the type prohibited by *Descamps* and its progeny cases, including *Gallardo* (which claim ultimately boils down to a challenge to the evidence the trial court relied on to find true the prior conviction allegations at issue).  (See *Gallardo*, *supra*, 4 Cal.5th at pp. 127-128.)

IV.    *Prior Prison Term Enhancements*

---

[11]    *People v. Marin* was overruled on other grounds by *Gallardo*, *supra*, 4 Cal.5th at page 139, footnote 6.

Celli contends the enactment of Senate Bill No. 136 requires both the section 667, subdivision (b), prior prison term enhancements imposed by the trial court to be stricken. The People respond that "[o]nly one of the section 667.5, subdivision (b), enhancements must be stricken." We agree with the People.

A jury convicted Celli of indecent exposure. (§ 314, subd. (1).) The trial court found true that Celli had a prior section 288, subdivision (a) conviction (which was also a strike conviction), a prior Health & Safety Code section 11377 conviction, and had served two prior prison terms within the meaning of section 667.5, subdivision (b). Subsequently, the trial court sentenced Celli to a determinate prison term of eight years: the upper term of three years on the indecent exposure conviction (§§ 314, 18), doubled to six years under the Three Strikes Law (§ 667, subds. (b)-(i)), plus two years for the two prior prison term enhancements (§ 667.5, subd. (b)).

"Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681.)

Effective January 1, 2020, Senate Bill No. 136 amended section 667.5, subdivision (b), to "limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b)." (*People v. Jennings*, *supra*, 42 Cal.App.5th at p. 681; *People v. Winn* (2020) 44 Cal.App.5th 859, 871-872.) As the People rightly concede, Senate Bill No. 136's amendment to section 667.5 applies retroactively to defendants, such as Celli, whose judgments were not yet final as of the statute's effective date. (*People v. Jennings*, *supra*, at pp. 681-682; *People v. Petri* (2020) 45 Cal.App.5th 82, 93-94; *People v. Winn*, *supra*, at p. 872.)

Celli's two prior prison term enhancements were based on a 2004 conviction for lewd act on a child under the age of 14 (§ 288, subd. (a)), and a 2015 possession of methamphetamine conviction (Health & Saf. Code, § 11377, subd. (a)), respectively.

As noted, Senate Bill No. 136 limits the one-year enhancement under section 667.5, subdivision (b), to each prior prison term "for a sexually violent offense as defined in subdivision (b) of Section 6000 of the Welfare and Institutions Code." Welfare and Institutions section 6600, subdivision (b), provides:

> "'Sexually violent offense' means the following acts when committed by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in the future against the victim or any other person, and that … result in a conviction …: a felony violation of Section 261, 262, 264.1, 269, 286, 287, 288, 288.5, or 289 of, or former Section 288a of, the Penal Code, or any felony violation of Section 207, 209, or 220 of the Penal Code, committed with the intent to commit a violation of Section 261, 262, 264.1, 286, 287, 288, or 289 of, or former Section 288a of, the Penal Code."

Possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) is not "a sexually violent offense as defined in subdivision (b) of section 6600 of the Welfare and Institutions Code." The People concede that "the one-year enhancement (§ 667.5, subd. (b)) for the prior prison term [Celli] served for this conviction should be stricken." We agree.

The parties, however, disagree on the question whether the offense of lewd act on a child under the age of 14 (§ 288, subd. (a)) is "a sexually violent offense as defined in subdivision (b) of section 6600 of the Welfare and Institutions Code," for purposes of Senate Bill No. 136.

Although Welfare and Institutions Code section 6600, subdivision (b) encompasses section 288 crimes, it specifies that section 288 crimes constitute sexually violent offenses when committed "by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in

34

the future against the victim or any other person." Celli's prior conviction under section 288, subdivision (a), did not include an element of "force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in the future against the victim or any other person."[12] However, the scope of Welfare and Institutions Code section 6600 is not defined by the language of that statute alone, it is also informed by Welfare and Institutions Code section 6600.1. Welfare and Institutions Code section 6600.1 provides: "If the victim of an underlying offense that is specified in subdivision (b) of Section 6000 is a child under the age of 14, the offense shall constitute a 'sexually violent offense' for purposes of Section 6600."

Celli now argues: "The specific reference in the revised Penal Code section 667.5, subdivision (b), to Welfare and Institutions Code section 6600, subdivision (b), without mention of Welfare and Institutions Code section 6600.1, indicates that a prison term for a violation of Penal Code section 288, subdivision (a), without the elements of force or violence, does not qualify as a sexually violent offense subject to enhancement pursuant to Penal Code section 667.5, subdivision (b) as revised by [Senate Bill No.] 136." Celli further contends: "The Legislature presumably knew of the existence of both Welfare and Institutions Code section 6600 and Welfare and Institutions Code section 6600.1 when it enacted [Senate Bill No.] 136 and chose not to reference Welfare and Institutions Code section 6600.1." He adds: "Had the Legislature intended that all violations of Penal Code section 288 against minors under the age of 14 be considered 'sexually violent' for purposes of Penal Code section 667.5, subdivision (b), it would have referenced Welfare and Institutions Code section 6600.1 in the amended code."

---

**12** The 2004 version of section 288, subdivision (a) provided:

"Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony …."

35

The People disagree with Celli's contention that Senate Bill No. 136 adopted the definition of a "sexually violent offense" originally set forth in Welfare and Institutions Code section 6600, subdivision (b), to the exclusion of the expanded definition of "sexually violent offense" subsequently added by Welfare and Institutions Code section 6600.1, "for purposes of [Welfare and Institutions Code] Section 6600." (Welf. & Inst. Code, § 6600.1.) The People argue: "By adding and amending Welfare and Institutions Code section 6600.1, the Legislature and the electorate expressly expanded the definition of 'sexually violent offense' found in Welfare and Institutions Code section 6600, subdivision (b). (Stats. 1996, ch. 461 (Sen. Bill No. 2161), § 3; Prop. 83, § 25, as approved by voters, Gen. Elec. (Nov. 7, 2006).)"

The People further contend:

"The words of Welfare and Institutions Code section 6600.1 are clear: [Celli's] 2004 conviction for section 288, subdivision (a)—the victim of this offense is statutorily defined as a child under the age of 14— 'constitute[s] a "sexually violent offense" *for purposes of Section 6600*.' (Italics added). (See *Great Lakes Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 155 ['It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed.'].) Senate Bill No. 136 amended section 667.5, subdivision (b), limiting the one-year enhancement for each prior prison term 'for a sexually violent offense *as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code*.' (Italics added.) When the Legislature amended section 667.5, subdivision (b), and referenced subdivision (b) of Welfare and Institutions Code section 6600, the Legislature is presumed to have been aware of Welfare and Institutions Code section 6600.1. (See *People v. McGraw* (1983) 141 Cal.App.3d 618, 622 ['in enacting or amending a statute, the Legislature is presumed to know of existing laws'].) The clear import of this presumption is that the Legislature's intent was for Welfare and Institutions Code section 6600.1 to be incorporated into the definition of 'sexually violent offense' under Welfare and Institutions Code section 6600, subdivision (b), for purposes of the section 667.5, subdivision (b), enhancement. [Celli's] construction would contravene, not effectuate, legislative intent."

The People also explain:

36

"The Legislature added Welfare and Institutions Code section 6600, including the definition of 'sexually violent offense' in subdivision (b), in 1995. (Stats. 1995, ch. 763 (Assem. Bill No. 888), § 3.) The Legislature added Welfare and Institutions Code section 6600.1 in 1996, amending the definition of 'sexually violent offense' to include an offense specified in Welfare and Institutions Code section 6600, subdivision (b), where the victim is 'a child under the age of 14 and the offending act or acts involved substantial sexual conduct.' (Stats. 1996, ch. 461 (Sen Bill No. 2161), § 3.) In 2006, the electorate approved an initiative that amended the definition to its current form – deleting the language 'and the offending act or acts involved substantial sexual conduct.' (Prop. 83, § 25, approved Nov. 7, 2006.) There is no question here that Senate Bill No. 136, signed into law on October 8, 2019, incorporates the current – not the pre-2006 – statutory definition of 'sexually violent offense' in Welfare and Institutions Code section 6600, subdivision (b)."

The People have the better argument regarding the issue the hand. Senate Bill No. 136 provides that "the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." Senate Bill No. 136 thus contemplates that the one-year enhancement would apply when the defendant had served a prior prison term for any and all offenses encompassed by Welfare and Institutions Code section 6600, subdivision (b). As mentioned, Welfare and Institutions Code section 6600.1 provides that, "[i]f the victim of an underlying offense that is specified in subdivision (b) of Section 6000 is a child under the age of 14, the offense shall constitute a 'sexually violent offense' for purposes of Section 6600." Because the directive in Welfare and Institutions Code section 6600.1 bears directly and expressly on the scope of Welfare and Institutions Code section 6600, the Legislature was entitled to assume that the scope of Welfare and Institutions Code section 6600, subdivision (b) is automatically informed by Welfare and Institutions Code section 6600.1, obviating the need for a specific reference to the latter statute in Senate Bill No. 136.

We conclude that for purposes of section 667.5, subdivision (b), as amended by Senate Bill No. 136, lewd act on a child under the age of 14 (§ 288, subd. (a)) is "a sexually violent offense as defined in subdivision (b) of section 6600 of the Welfare and

37

Institutions Code." (Senate Bill No. 136.) Accordingly, there is no basis for striking the one-year section 667.5, subdivision (b) enhancement imposed for the prior prison term Celli served on account of his conviction for this offense.

As noted above, the one-year section 667.5, subdivision (b) enhancement imposed for the prior prison term Celli served on account of his conviction for possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), must be stricken. Because the trial court imposed the maximum possible sentence, we need not remand the matter for resentencing. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 342.) Accordingly, we will strike this enhancement, modify the sentence, and affirm the judgment as modified.

## **DISPOSITION**

The one-year enhancement previously imposed under Penal Code section 667.5, subdivision (b) for the prior prison term Celli served on account of his conviction for possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), is stricken. The sentence is modified to an aggregate term of seven years in state prison. Upon issuance of the remittitur, the trial court shall send an amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is affirmed as modified.

SMITH, J.

WE CONCUR:


POOCHIGIAN, Acting P.J.


MEEHAN, J.